[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13267

_____

D. C. Docket No. 04-00287-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH W. ROBERTSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 27, 2007)**

Before PRYOR, KRAVITCH and ALARCON,* Circuit Judges.

PRYOR, Circuit Judge:

The two main issues in this appeal relate to restitution under the Mandatory

---

* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Victim Restitution Act, 18 U.S.C. § 3663A: (1) was it an abuse of discretion to assign the same restitution value to each stolen good, regardless of whether that good was later sold by the offender; and (2) was a purchaser of the stolen goods, who was sued by and settled with the manufacturer on grounds not disclosed in the record, a victim entitled to restitution of the cash paid in settlement? A jury convicted Joseph W. Robertson of wire and mail fraud for fraudulently obtaining software from Novell, Inc., through the use of fictional purchasers. Robertson sold many units of that software to Network Systems Technology, Inc. Network Systems later paid Novell to settle a civil suit filed by Novell on grounds not disclosed in the record. The district court sentenced Robertson to 96 months of imprisonment and ordered restitution to Novell for the wholesale price of every unreturned unit of software and restitution to Network Systems for the money it paid Novell to settle. In addition to his appeals of two convictions and the application of a sentencing enhancement, all of which we affirm, Robertson challenges the calculation of the restitution owed Novell and argues that Network Systems was not a victim entitled to restitution. We agree with the latter argument, but not the former one. Because the district court did not abuse its discretion when it calculated the restitution owed Novell, we affirm that order of restitution. We vacate the order of restitution to Network Systems because it was not a victim.

2

# I. BACKGROUND

We divide our description of the factual and procedural background into three parts. First, we describe Robertson's fraudulent acquisition of software from Novell. Second, we describe Robertson's sale of the stolen software to Network Systems. Third, we discuss Robertson's convictions and sentencing.

## A. The Acquisition of the Units of Software

Novell manufactures computer software called Netware. Novell sells units of Netware, each of which includes a copy of the software and a license to use it, directly to end users, distributors, companies, and government agencies. During the period in which Robertson fraudulently acquired Netware from Novell, the company was headquartered in Utah. To order from Novell, a customer would communicate with the company by e-mail, telephone, or facsimile. Novell offered Netware to educational institutions at discounted prices, which could be as much as 90 percent lower than the retail prices.

In May 1999, Novell received a purchase order by facsimile from ACL Learning Center for units of Netware at discounted prices. The order was signed Joe Robertson/ACL Learning Center, and the address for shipment was that of a house in Georgia rented by Robertson's mother, where he then lived and maintained an office with file cabinets, a bed, a computer, copy machines, and a

3

facsimile machine. Novell shipped the units of software and received two similar orders in June 1999, for which it shipped additional units.

In August 1999, Novell received a purchase order by facsimile from James Turner of Cobb Academy for units of Netware at discounted prices. As requested in the order, Novell shipped the units of software to a post office box at a Mail Boxes Etc. store. The post office box was rented by Robertson.

In November 1999, Novell shipped units of Netware at discounted prices to Fulton County Educational Services, but Novell has no record of how the order was placed. The address for Fulton County Educational Services was, in fact, the address for an apartment complex where Heather Sharpe then lived. Sharpe knew Robertson, although she testified that she never received a package for him, and there was no evidence that Robertson knew Sharpe's address or ever went to her apartment.

In February and March 2000, Novell received three purchase orders by facsimile from Jay McGhee of Atlanta City Educational Services for units of Netware at discounted prices. As requested in the order, Novell shipped the units of software to 253 Trinity Avenue, which was actually the address for an apartment rented by Lee Ann Vance. Vance knew Robertson and received at her apartment two or three packages for him.

Novell shipped a total of 378 units of Netware to ACL Learning Center, Cobb Academy, Fulton County Educational Services, and Atlanta City Educational Services. Each unit had a unique part number and license serial number. Novell never received payment for any of the units shipped. It is the policy of Novell not to ship software to any customer who has an outstanding balance for more than 30 days.

*B. The Sale of Units of Software to Network Systems*

In June 1999, an individual who identified himself as Gino Barrett offered to sell units of Netware for approximately $2000 each to Network Systems, a computer hardware and software engineering firm owned by Michael Oken. Because the wholesale price would have been around $10,000 each, Oken sent two individuals, Scott Richardson and Donald Coleman, to inspect the units of software. When asked how he obtained the units, Barrett stated that he was a dealer of Novell software. At trial, Richardson and Coleman identified Robertson as "Barrett."

Network Systems purchased units of Netware from Robertson on more than ten occasions. During the period in which Robertson acquired Netware from Novell, Network Systems bought Netware only from Robertson. Robertson admits that Network Systems purchased 239 of the 378 units of Netware shipped by

5

Novell to ACL Learning Center, Cobb Academy, Fulton County Educational Services, and Atlanta City Educational Services. There is no evidence that Robertson sold the other 139 units.

Network Systems resold the units of Netware for a profit of $42,721. If the customer requested it, the unique serial number of each unit purchased was printed on the sales invoice. Serial numbers reflected in the sales invoices of Network Systems match serial numbers of units of Netware shipped by Novell to all four fictional educational institutions.

In November 2004, Network Systems and Novell settled civil litigation related to the Netware purchased from Robertson. As part of a confidential settlement agreement, Network Systems paid Novell $125,000. Robertson asserts that Novell sued Network Systems for breach of a distributor agreement, because Network Systems purchased units of Novell software from a source other than Novell or an authorized Novell distributor, but there is no evidence in the record of the precise grounds for the lawsuit between Network Systems and Novell. In a victim impact statement made at sentencing, Oken mentioned "[t]he Lanham Act" but did not elaborate further.

*C. Robertson's Convictions and Sentencing*

In January 2006, Robertson was convicted by a jury on eight counts of wire

fraud, 18 U.S.C. § 1343, for causing eight purchase orders to be sent in interstate commerce by facsimile on behalf of ACL Learning Center (counts 1 through 3), Cobb Academy (count 4), Fulton County Educational Services (count 5), and Atlanta City Educational Services (counts 6 through 8). Robertson was also convicted on eight counts of mail fraud, id. § 1341, for causing Novell products to be sent by private and interstate carrier boxes to ACL Learning Center (counts 9 through 11), Cobb Academy (count 12), Fulton County Educational Services (count 13), and Atlanta City Educational Services (counts 14 through 16). Robertson moved for a judgment of acquittal as to the counts relating to Fulton County Educational Services (counts 5 and 13), and the district court denied the motion.

The presentence investigation report applied the edition of the Sentencing Guidelines in effect at the time Robertson committed his offenses, see United States Sentencing Guidelines (Nov. 1998), because the later edition of the Guidelines in effect at sentencing would have resulted in higher offense levels. The presentence report calculated a total offense level of 23, which included an enhancement of 2 levels for sophisticated means. See id. § 2F1.1(b)(5)(C). The presentence report recommended restitution of $1,341,522 to Novell, which was the wholesale price of all 378 of the fraudulently obtained and unreturned units of

software. The presentence report then mentioned the possibility of restitution of $125,000 to Network Systems for the money Network Systems paid Novell to settle its civil suit. Under the Restitution Act, defendants convicted of wire or mail fraud must make restitution to any "victim" of their offenses. See United States v. Dickerson, 370 F.3d 1330, 1335-36 (11th Cir. 2004) (restitution required for wire fraud); United States v. Yeager, 331 F.3d 1216, 1227 (11th Cir. 2003) (mail fraud).

The district court followed the recommended Guidelines calculations and imposed a sentence of 96 months of imprisonment. Robertson objected to the application of the enhancement for sophisticated means. The district court then ordered restitution to Network Systems in the amount of $125,000 and to Novell in the amount of $1,216,522, which the court calculated by subtracting $125,000 from $1,341,522. Robertson objected to the calculation of the amount of restitution owed Novell and to any award of restitution to Network Systems.

## II. STANDARDS OF REVIEW

"We review de novo the legal question of whether the record contains sufficient evidence to support [a] guilty verdict." United States v. Tinoco, 304 F.3d 1088, 1122 (11th Cir. 2002). We "view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict." Id. (internal quotation marks omitted).

The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." Id. (internal quotation marks omitted).

We review for clear error "the district court's factual findings related to the imposition of sentencing enhancements," United States v. Barakat, 130 F.3d 1448, 1452 (11th Cir. 1997), including a finding that a defendant used sophisticated means, cf. id. at 1456-57 (in sentencing for tax evasion, finding of "sophisticated means" reviewed for clear error). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (internal quotation marks omitted). Although review for clear error is deferential, a finding of fact must be supported by substantial evidence. See, e.g., Drew v. Dep't of Corr., 297 F.3d 1278, 1283 (11th Cir. 2002) (clear error standard "requires us to affirm a district court's findings of fact unless the record lacks substantial evidence to support that determination" (internal quotation marks omitted)).

Our analysis of an order of restitution under the Restitution Act involves

9

three standards of review. We review de novo "the legality of an order of restitution," United States v. Washington, 434 F.3d 1265, 1267 (11th Cir. 2006), but review for abuse of discretion the determination of the restitution "value" of lost or destroyed property, see United States v. Shugart, 176 F.3d 1373, 1375 (11th Cir. 1999). We review for clear error "factual findings underlying a restitution order." Washington, 434 F.3d at 1267; see also Shugart, 176 F.3d at 1375.

### III. DISCUSSION

Robertson presents five arguments on appeal. First, he contends that the evidence was insufficient to convict him on the counts of fraud related to Fulton County Educational Services (counts 5 and 13). Second, he argues that the district court should not have applied a sentencing enhancement for sophisticated means. Third, he asserts that the district court miscalculated the restitution owed Novell, because the court did not consider that some unreturned units of Netware may not have been sold. Fourth, Robertson argues that Network Systems was not a victim entitled to restitution. Fifth, Robertson contends, as an alternative to his fourth argument, that the district court incorrectly calculated the amount of restitution owed Network Systems.

10

*A. The Evidence Was Sufficient to Convict Robertson on the Counts of Fraud Related to Fulton County Educational Services.*

Robertson argues that the government did not offer direct evidence sufficient to convict him on the counts of mail and wire fraud related to Fulton County Educational Services. The government responds that it presented sufficient circumstantial evidence for a reasonable jury to convict. We agree with the government. We first discuss the count of mail fraud and then turn to the count of wire fraud.

Mail fraud consists of "(1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (internal quotation marks omitted). Robertson contends that the government failed to offer direct evidence that he caused Novell to mail units of software to Fulton County Educational Services. This argument is unavailing.

Mail fraud can be proved by circumstantial evidence, see United States v. Metallo, 908 F.2d 795, 798 (11th Cir. 1990), and the government offered sufficient circumstantial evidence. The evidence established that Novell received an order from Fulton County Educational Services that requested shipment to an address where Heather Sharpe lived and Sharpe was acquainted with Robertson. Although Sharpe testified that she did not receive any packages for Robertson, we make all

11

reasonable inferences and credibility determinations in favor of the government. See United States v. Dennis, 237 F.3d 1295, 1300 (11th Cir. 2001). The evidence established that, during a period when Network Systems bought units of Netware only from Robertson, Network Systems sold units of Netware that bore the unique serial numbers of units shipped to Fulton County Educational Services. Based on this evidence, a reasonable jury could have convicted Robertson on the count of mail fraud related to Fulton County Educational Services.

To establish the offense of wire fraud, the government must prove "(1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme." United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003). Robertson argues that the government failed to produce a facsimile cover sheet or other direct evidence that an interstate wire was used. This argument also fails.

Because "[t]he only difference between" mail and wire fraud "is [that] mail fraud requires proof of the use of the mails[] while wire fraud requires proof of the use of the wires," Beck v. Prupis, 162 F.3d 1090, 1095 (11th Cir. 1998), wire fraud, like mail fraud, can be proved by circumstantial evidence. We agree with the Sixth Circuit that "[t]here is no requirement that the government produce direct proof in the form of telephone bills" or facsimile cover sheets. United States v.

12

Griffith, 17 F.3d 865, 874 (6th Cir. 1994). As "[p]roof of a routine practice of using the mail to accomplish a business end is sufficient to support a jury's determination that mailing occurred," United States v. Waymer, 55 F.3d 564, 571 (11th Cir. 1995), proof of a routine practice of using the wires to accomplish a business end is sufficient to support a count of wire fraud.

The government presented ample circumstantial evidence. It offered evidence that Robertson routinely sent purchase orders to Novell by interstate facsimile. The government proved that Robertson was located in or around Atlanta, Georgia, and Novell was located in Utah where customers contacted it by e-mail, telephone, or facsimile. The government proved that Robertson had a facsimile machine and sent seven other purchase orders to Novell by facsimile. Based on this evidence, a reasonable jury could have found that Robertson sent by facsimile the purchase order on behalf of Fulton County Educational Services and convicted Robertson of wire fraud.

*B. The District Court Correctly Applied a Sentencing Enhancement for Sophisticated Means.*

Robertson contends that the district court erroneously applied a sentencing enhancement for sophisticated means. He argues that he employed a simple scheme in which he ordered items and did not pay. We disagree.

Section 2F1.1(b)(5)(C) of the 1998 edition of the Guidelines provides a two-

13

level enhancement if an offense of fraud "otherwise involved sophisticated means." U.S.S.G. § 2F1.1(b)(5)(C). The commentary explains that "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Id. § 2F1.1 cmt. n.15. For example, "[i]n a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction would ordinarily indicate sophisticated means." Id. "Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts also ordinarily would indicate sophisticated means." Id.

The district court found that Robertson had employed "a rather clever and sophisticated method of doing business," and we are not, in our review of that finding, left with a definite and firm conviction that a mistake has been committed. Robertson attempted to insulate himself by hiding behind false names, such as James Turner or Jay McGhee, and several false addresses. He used fictional entities to take advantage of discounted prices and switched entities every 30 days to circumvent the policy of Novell not to ship to customers that were more than 30 days in arrears. The district court did not clearly err in finding that Robertson had used sophisticated means.

*C. The District Court Did Not Abuse Its Discretion When It Calculated*
*the Restitution Owed Novell.*

Robertson challenges the calculation of the amount of restitution owed

Novell. The district court calculated the restitution of $1,216,522 in two steps. It

first computed the total wholesale price for all 378 of the fraudulently obtained and

unreturned units of Netware. The district court then reduced that total by

$125,000, the amount Network Systems paid Novell to settle its civil suit.

Robertson contests the decision of the district court to use the wholesale

price as the restitution value for every unreturned unit of software. He argues that

the court should have used the wholesale market price only for the 239 unreturned

units of Netware that the government proved he sold and the much lower

manufacturing replacement cost for the restitution value of the remaining 139 units

that he may or may not have sold. Robertson's argument fails.

An order of restitution must require a defendant whose offense caused

damage to, loss of, or destruction of property of a victim of the offense to make

restitution by returning the property or paying the "value" of any unreturnable

property. See 18 U.S.C. § 3663A(b)(1). If the defendant must pay, the amount

shall be the greater of the "value" of the unreturnable property on the date of

sentencing or on the date of the damage, loss, or destruction. Id.

§ 3663A(b)(1)(B)(i)(I), (II). The statute does not define the term "value," but we

15

addressed the question in United States v. Shugart.

We explained in Shugart that value is "easy to determine" for "fungible commodities." 176 F.3d at 1375. It is "the actual cash value, or fair market value, of the item—that is, '[t]he fair or reasonable cash price for which the property could be sold in the market in the ordinary course of business.'" Id. (quoting Black's Law Dictionary 35 (6th ed. 1990)). But "[w]here actual cash value is difficult to ascertain—because an item is unique, or because there is not a broad and active market for it—replacement cost may be a better measure of value." Id. We review for abuse of discretion the choice by a district court between using market price or replacement cost as the restitution value. Id.

There is no dispute that the district court was correct to require Robertson to pay for each of the 378 units of software he fraudulently obtained from Novell. Nothing in the record suggests that any units of software were or could have been returned to Novell. The only question is whether the district court abused its discretion when it chose to use the wholesale market price as the value of each unreturned unit of Netware.

The district court did not abuse its discretion in its valuation of the units. When Robertson fraudulently obtained the units of software from Novell, the units were fungible commodities, so their value, as explained in Shugart, was the fair

16

market price Novell would have received in the ordinary course of business. That price was either the wholesale price or the retail price, because Novell sold to both distributors and end users. The district court chose the lower wholesale price, which the government recommended with the acknowledgment that Robertson "would be grant[ed] . . . a benefit." See United States v. Susel, 429 F.3d 782, 784 (8th Cir. 2005) (affirming restitution in the amount of retail value of stolen software). Robertson's complaint about that lenient break rings hollow.

Whether Robertson later sold the units of software is irrelevant. The value of the units of software, as fungible commodities, was the fair cash price for which they "could be sold." Shugart, 176 F.3d at 1375 (emphasis added) (internal quotation marks omitted). Each unit had its value even though it had not yet been sold. The later sale of a unit of software merely realized its value. Cf. United States v. Coviello, 225 F.3d 54, 64 (1st Cir. 2000) ("It does not matter . . . that [the defendant's] sales might not have displaced $17 million worth of legitimate Microsoft product. What matters is that the stolen CD-ROMs contained intellectual property that was worth between $10 million and $20 million if they had been sold legitimately.").

Confronted with our precedent, Robertson argues that the units of software were not fungible commodities but the sort of "unique" commodities we described

17

in Shugart. He contends that the units were not fungible commodities because they were inexpensive to manufacture. We reject this baseless argument.

We also find inapposite Robertson's reliance on decisions of our sister circuits that address restitution in the context of counterfeit goods. See United States v. Hudson, 483 F.3d 707 (10th Cir. 2007); United States v. Beydoun, 469 F.3d 102 (5th Cir. 2006). He relies on those decisions for the principle that restitution should be owed only for goods that the government proved were sold, but restitution to a legitimate seller for harm caused by counterfeit goods is not analogous to restitution to a seller for goods that were stolen through fraud. A legitimate seller is harmed by a counterfeit good only when that product enters the market; a seller who is fraudulently deprived of his goods is harmed as soon as those goods are stolen.

### D. Network Systems Was Not a Victim Entitled to Restitution Under the Restitution Act.

Robertson contends the district court erroneously determined that Network Systems was a "victim" as defined under the Restitution Act. He argues that Network Systems was not "directly and proximately harmed as a result of the commission" of his offenses, 18 U.S.C. § 3663A(a)(2), because the $125,000 loss to Network Systems was caused solely by the decision of Network Systems to breach its distributor agreement with Novell. We agree that Network Systems was

18

not a victim under the Restitution Act.

To be a "victim" under the Restitution Act, Network Systems must have suffered a "harm that 'directly and proximately' results from the commission of [Robertson's] offense[s]." Washington, 434 F.3d at 1268. We have never defined the phrase "directly and proximately," but we agree with the definitions that our sister circuits have adopted. "[T]he government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)." United States v. Cutter, 313 F.3d 1, 7 (1st Cir. 2002) (internal quotation marks omitted). "Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 928 (9th Cir. 2001) (citations omitted); see also United States v. Donaby, 349 F.3d 1046, 1054 (7th Cir. 2003) ("victim" under the Restitution Act harmed by "likely and foreseeable outcome of the crime"). Consistent with these definitions, we have affirmed that damage inflicted during the flight of a bank robber was harm that "directly and proximately" resulted from the commission of the bank robbery.

19

Washington, 434 F.3d at 1268-70.

It is clear that Robertson's fraud on Novell was a "but for" cause of the loss to Network Systems of $125,000, because the lawsuit that resulted in the loss was "related to the [fraudulently obtained units of] software." Although the record does not reveal the grounds for the lawsuit, there is no dispute that the lawsuit would not have occurred had Robertson not defrauded Novell. The question is whether Robertson's fraud on Novell can be considered a proximate cause of the loss to Network Systems.

On this issue, we review the district court for clear error. Whether a person or entity was a victim is a legal conclusion we review de novo, United States v. De La Fuente, 353 F.3d 766, 771 (9th Cir. 2003), but proximate cause is a factual finding we review for clear error, see id. at 772; see also Am. Dredging Co. v. Lambert, 153 F.3d 1292, 1295 (11th Cir. 1998); Lindsey v. Navistar Int'l Transp. Corp., 150 F.3d 1307, 1317 (11th Cir. 1998).

Although the district court made no express finding that Robertson's fraud on Novell proximately caused the loss suffered by Network Systems, we infer an implied finding because that is consistent with the conclusion of the district court that Network Systems was a victim. See United States v. $242,484.00, 389 F.3d 1149, 1154 (11th Cir. 2004). The evidence suggested several intervening events

20

between Robertson's fraud on Novell and the loss to Network Systems of $125,000, including the lawsuit and settlement between Novell and Network Systems. We infer that the district court found the intervening events to be reasonably foreseeable consequences of and not too attenuated from Robertson's fraud.

The finding is clearly erroneous. "Our deference to the district court is not unlimited, . . . and we will hold a finding of fact clearly erroneous if the record lacks substantial evidence to support it." Thelma C. Raley, Inc. v. Kleppe, 867 F.2d 1326, 1328 (11th Cir. 1989). There is insufficient evidence to support this finding.

The problem is that neither the grounds for the lawsuit between Novell and Network Systems nor the terms of the settlement are described in the record. Whether the lawsuit and settlement were reasonably foreseeable consequences of Robertson's fraud on Novell depends on the nature of the litigation. Without any detail about the basis for the lawsuit or the settlement, there is inadequate evidence to support a finding that the lawsuit and settlement between Novell and Network Systems were reasonably foreseeable. It is not enough that the litigation was "related to" the units of software, because that vague description, without elaboration, includes a broad universe of lawsuits.

21

At oral argument, the government contended that details about the lawsuit between Novell and Network Systems were admitted at sentencing. It directed us to the unsworn victim impact statement that Michael Oken, the owner of Network Systems, gave orally at the sentencing hearing over the objection of Robertson, who argued that the district court had not yet concluded that Network Systems was a victim. We reviewed this aspect of the record, but found it wanting.

The statement of Oken provides few details and none that alter our analysis. Oken made an opaque reference to "[t]he Lanham Act," mentioned that Novell "went after [him] personally," and asserted that the loss to Network Systems "stem[med] from the fraud that Mr. Robertson committed." These sparse details are still insufficient to support a finding that the lawsuit and settlement between Novell and Network Systems were reasonably foreseeable consequences of Robertson's fraud.

Because it was clear error to find that Robertson's fraud on Novell proximately caused the loss to Network Systems, the district court erred in concluding that Network Systems was a victim under the Restitution Act. Robertson should not have been ordered to make restitution to Network Systems. We do not adopt Robertson's position that Network Systems was the sole cause of its loss of $125,000, but we agree that Network Systems was not a victim.

The government argues in the alternative that Network Systems was entitled to restitution under a statutory provision that provides restitution to insurers. 18 U.S.C. § 3664(j)(1). That provision states that, "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation." Id. The government contends that Network Systems compensated Novell in part for its lost units of software, because the district court reduced the restitution to Novell by the $125,000 that Network Systems paid Novell to settle. This argument fails.

Section 3664(j)(1) does not apply because the district court did not find that Network Systems paid Novell to compensate it for its lost units of software, nor is there any evidence in the record to support such a finding. As discussed above, the record lacks any detail regarding the basis for the lawsuit between Novell and Network Systems or the terms of their settlement. We reject the argument of the government that Network Systems is entitled to restitution simply because the district court chose, with no explanation, to reduce the restitution to Novell by an amount of money Network Systems once paid to Novell.

## IV. CONCLUSION

Robertson's convictions on counts 5 and 13, the application of a sentencing

23

enhancement for sophisticated means, and the order of restitution to Novell are

**AFFIRMED**.  The order of restitution to Network Systems is **VACATED**.