[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 23, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15803
Non-Argument Calendar
_____

D. C. Docket No. 06-20076-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUSTAVO VENTA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 23, 2007)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Gustavo Venta appeals his conviction and sentence for possession of a

firearm by a convicted felon, 18 U.S.C. § 922(g)(1).  Venta contends that there was

insufficient evidence of his knowing possession of the firearm to support his conviction and that the district court erred in its sentence by finding that he was an armed career criminal.

## I.

During the government's case-in-chief, it called three witnesses. The first was Officer John Saavedra of the Miami-Dade police department. He testified as follows. On January 21, 2006, Saavedra responded to a call reporting a possible burglary in progress. The suspect had been described to him as a Latino man, about six feet tall, wearing dark clothing, walking next to a slowly moving blue pickup truck with its headlights off. As Saavedra drove his police cruiser to the site of the possible burglary, he saw a dark blue pickup truck speeding away with its headlights off. He pulled the truck over.

As Officer Saavedra approached the passenger side door, a white man wearing a blue jacket and dark blue pants with a white stripe jumped out of the vehicle; it was Venta. He had his right hand in the air and his left in his jacket pocket. After being told to show both of his hands, Venta jumped back into the truck and closed the door. Officer Saavedra saw him fidget with his hands toward the side of his body, lean over, and move his legs.

Officer Saavedra went up to the truck and asked Venta to exit the car. After

2

Venta did so, Saavedra patted him down and placed him on the sidewalk. Saavedra then commanded the driver, later identified as Angel Puentes, to exit the truck with his hands up. When both men were on the sidewalk, Venta told Puentes to "keep his mouth shut and not say anything." When questioned, Venta claimed that they had been in his truck looking for Puentes' lost dog and, because he had been drinking, he could not drive.

Officer Saavedra then handcuffed Venta and placed him in the back of the police cruiser. While searching the truck, Officer Saavedra saw the butt of a firearm sticking out from under the passenger seat. The firearm was loaded. While Saavedra unloaded it, Venta yelled out the window of the police cruiser that it was his old gun and that he carried it for protection.

The government's second witness, a fingerprint expert, testified that no latent fingerprints were found on the gun, but that the gun did not have a good surface for recovering fingerprints.

The government's final witness, Officer Raul Lorenzo, testified that he was sent to the scene of the arrest as back-up for Officer Saavedra. When he arrived, he found one suspect seated on the ground and Saavedra patting down the other suspect. Lorenzo heard Venta tell Puentes to be quiet and not say anything. He then saw Saavedra search the car, find the gun, and unload it. At that point, he

3

heard Venta yell out that the gun was his and for a long time he had kept it for protection. Both parties stipulated that the truck was Venta's, that Venta had a felony conviction prior to his arrest for offense for which he was tried, and that the firearm met the interstate requirement of 18 U.S.C. § 922(g).

After the government's case-in-chief, Venta moved for a judgment of acquittal, which the district court denied. Venta then presented several witnesses.

Puentes' girlfriend testified that a man had stolen her dog and that she had asked Puentes and Venta to find it. She admitted that, although she drove around looking for the dog, she had not put up any flyers or contacted anyone other than Puentes and Venta. She testified that she was at Venta's house for dinner when Venta and Puentes left to go look for the dog and that neither took a flashlight, leash, or dog treats with them. She also said that Venta had been drinking a lot.

Puentes' girlfriend's neighbors testified that she had a dog and that they had seen it wander away from the neighborhood.

Puentes testified that he and Venta had been out looking for the dog and had stopped once or twice while looking before being pulled over by the police officer. He also said that Venta remained in the passenger seat throughout the encounter with the police. On cross-examination, he stated that he had not known he had been driving without headlights on.

4

Venta's mother testified that the gun found in Venta's truck belonged to her and that it had been given to her by a friend in 1992. She said that, although she usually kept it in her bedroom, beginning in December 2005 she put it in her purse because there was a rapist in the neighborhood. She also testified that on January 15, 2006, about a week before Venta's arrest, she went to the bank in the truck, placed the gun under the passenger's seat before going in, and forgot to remove it later. She claimed she had never told Venta about the gun. Finally, she stated that she was at the dinner on January 21, 2006, with Venta, Puentes, and Puentes' girlfriend when the girlfriend told all of them about her missing dog. She mentioned during her testimony that they had eaten ribs for dinner.

In rebuttal, the government called an ATF agent, who testified that he had previously interviewed Venta's mother, at which time she told him that she had owned the gun for 20 years and she had put it in the truck after her house was burglarized. The agent also stated that, before Venta's mother's testimony but after Puentes' girlfriend's, he overheard the two women talking. The girlfriend told Venta's mother that on cross-examination she had been asked what they had eaten for dinner and that she had testified that they had eaten ribs. The agent then heard Venta's mother say "We had ribs? I don't remember what I had that night."

Venta again moved for a judgment of acquittal, and the district court again

5

denied it. The jury found Venta guilty of possession of a firearm by a convicted felon.

The sentencing guideline for an 18 U.S.C. § 922(g)(1) offense is in United States Sentencing Guidelines § 2K2.1(a)(4)(A) (Nov. 2006). Under this guideline, the presentence investigation report assigned Venta a base offense level of 20 because he was in possession of a firearm and had a previous felony conviction for a crime of violence or controlled substance offense.

The PSR recognized that Venta falls within 18 U.S.C. § 924(e), which carries enhanced penalties for those convicted of possession of a firearm by a convicted felon who already have "three previous convictions . . . for a violent felony or serious drug offense, or both, committed on occasions different from one another." Venta had been previously convicted of aggravated assault, possession of cocaine with intent to distribute, and, most pertinent to this appeal, resisting an officer with violence. Under U.S.S.G. § 4B1.4(b)(3)(B), someone who meets the requirements in § 924(e) is considered an armed career criminal. In Venta's case, this increased his offense level to 33. The PSR calculated Venta's criminal history category as IV, resulting in a suggested guideline range of 188 to 235 months imprisonment.

Venta objected to the PSR, contending that he had actually been convicted

6

for resisting arrest without violence, and not, as the PSR indicated, resisting arrest with violence. Venta submitted both the judgment of conviction and the order for probation for that offense. The judgment listed Venta's conviction as resisting arrest with violence, but the order of probation indicated that he was convicted for resisting arrest without violence. Resisting arrest with violence is a third degree felony under Florida law, while resisting arrest without violence is a first degree misdemeanor.

The discrepancy between the documents, Venta argued, showed that there was insufficient evidence to find that the conviction was for a violent felony, meaning that he should not have been sentenced as an armed career criminal. The government responded by arguing that: (1) the certified judgment of conviction stated that Venta was convicted under a Florida statute for resisting arrest with violence; (2) the memorandum of costs listed the conviction as resisting arrest with violence and fined Venta the amount assessed for felonies; (3) the sentencing guidelines score sheet used by the state court indicated a conviction for resisting arrest with violence; and (4) the facts contained in the arrest report support a charge of resisting arrest with violence. Additionally, both the arrest warrant and the penalty score sheet used by the state court described the underlying offense as resisting arrest with violence.

In reply, Venta submitted an order revoking his probation for resisting arrest and the accompanying affidavit describing his probation violation, both of which showed his conviction as resisting arrest without violence.

The district court, after hearing both sides' arguments, found by a preponderance of the evidence that the conviction was for resisting arrest with violence and, thus, Venta's offense level should be 33. Then, considering the guideline range of 188 to 235 months, the district court sentenced Venta to 188 months imprisonment.

## II.

We first consider the sufficiency of the evidence. When a defendant contends that there is insufficient evidence, "[w]e review de novo the legal question of whether the record contains sufficient evidence to support a guilty verdict [and] . . . view the evidence in the light most favorable to the government[,] . . . resolv[ing] all reasonable inferences and credibility evaluations in favor of the jury's verdict." United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007) (internal quotation marks and citations omitted, italics added).

Venta contends that there is insufficient evidence in the record for a reasonable jury to have found that he knowingly possessed the firearm in the vehicle. Although he characterizes it as one argument, Venta appears to be

8

arguing: (1) that there is insufficient evidence to prove that he knew the gun was in the truck; and (2) that there is insufficient evidence to prove that he had actual or constructive possession of the gun. He relies upon three facts in support of his position. First, Officer Saavedra's testimony that when he performed the traffic stop Venta jumped out of the truck and then back in was contradicted by Puentes, the driver. Second, Saavedra did not mention the butt of the gun sticking out from under the seat in his arrest affidavit. And third, Venta's mother testified that it was her gun, that she left it in the truck by mistake, and that her son did not know it was there.

Both of Venta's arguments attacking the sufficiency of the evidence are without merit. We draw all "credibility evaluations in favor of the jury's verdict." Id. Had the jury believed Puentes over Officer Saavedra or believed Venta's mother, then it might not have convicted Venta. Because the jury did convict him, however, we must conclude that it believed Saavedra over Puentes and did not believe Venta's mother.

Officer Saavedra testified that he saw Venta, who had been outside the truck with his left hand in his jacket pocket, jump into the passenger side of the truck, fidget with his hands toward the side of his body, lean over, and then move his legs. The firearm with its butt sticking out was then found under the passenger

9

seat.  Additionally, Saavedra and the other officer testified that Venta yelled out the window of the police cruiser that the gun was his and that he carried it for protection.  From these facts a reasonable jury could conclude that Venta, upon being challenged by the officer, jumped in the truck and hid his firearm under the seat.  If he did that, then there was sufficient evidence to find:  (1) that Venta knew the gun was in the truck, because he put it there; and (2) that he had possession of the gun, because he actually had it on his person before stowing it below the seat.

We now turn to Venta's second contention, that the district court erred in finding that Venta was an armed career criminal.  We review the application of the sentencing guidelines by the district court <u>de novo</u> and review its findings of fact only for clear error.  <u>United States v. Crawford</u>, 407 F.3d 1174, 1177 (11th Cir. 2005).  Venta relies on the conflict between various documents associated with his conviction for resisting arrest.  The judgment states that he was convicted of resisting an officer with violence under Florida Statute § 843.01, making no reference to the statute for resisting an officer without violence.  The order of probation signed by the judge in that case, however, lists the offense as resisting an officer without violence, as do the order revoking Venta's probation and the affidavit of violation of probation supporting the revocation.

In addition to the certified judgment record, all of the following documents

10

indicate that Venta was convicted of resisting arrest with violence: the state court memorandum of costs, the state court sentencing guidelines score sheet, the arrest warrant for the resisting arrest charge, the state court penalty score sheet, and the arrest report.

We have held that "a district court only may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." United States v. Spell, 44 F.3d 936, 939 (11th Cir. 1995). Although Venta is asking us to look at the documentary evidence surrounding the conviction rather than the conduct surrounding it, the same principle holds. When the face of the judgment is unambiguous, the district court should not inquire further to determine the nature of the conviction. See id. To hold otherwise would entail an obligatory inquiry into the facts of every determination of earlier convictions, which the Supreme Court noted would be impractical and unwieldy. See Taylor v. United States, 495 U.S. 575, 602, 110 S. Ct. 2143, 2159 (1990). The district court did not clearly err by relying exclusively on the judgment of conviction in finding that Venta had a third conviction that qualified him as an armed career criminal. Accordingly, the district court did not err in calculating Venta's sentencing guideline range.

**AFFIRMED.**

11