[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 16-10801, 16-10846

_____

D.C. Docket Nos. 1:15-cr-20538-BB-1; 1:15-cr-20538-BB-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHERWIN STERLING,
ORLANDO COMRIE,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 18, 2017)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and DUFFEY,[*] District
Judge.

_____

[*] Honorable William S. Duffey, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

DUFFEY, District Judge:

This appeal requires us to consider (1) whether the copyright holders of the counterfeited DVDs in this appeal are "victims" within the meaning of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"), and (2) whether the district court erred when, in determining the amount of loss to the copyright holders, it used the wholesale value of authentic DVDs. The MVRA requires that a "victim" be directly and proximately harmed as a result of a defendant's offense, and that the amount of restitution owed to a victim be based on the amount of loss actually caused by a defendant's conduct. The facts before the district court were sufficient to support that a sale of one counterfeit DVD displaced a sale of one authentic DVD, and we conclude that (1) the copyright holders were victims of the defendants' conduct and (2) the district court did not err in using the wholesale value of authentic DVDs in calculating the restitution amount. We affirm.

## I. BACKGROUND

After pleading guilty to conspiring to traffic in counterfeit DVDs, trafficking in counterfeit DVDs, and importing into the United States counterfeit DVDs by means of a false declaration, co-defendants Sherwin Sterling and Orlando Comrie (together, "Appellants") were ordered to pay restitution in the amount of $163,608. On appeal, Sterling and Comrie challenge the restitution order. They contend the

2

district court erred (1) in finding that the copyright holders of the counterfeited DVDs were entitled to restitution, and (2) in calculating the amount of restitution.

Appellants' scheme involved selling counterfeit DVD box sets as genuine. Appellants purchased counterfeit DVD box sets from China. These were counterfeit copies of genuine box sets produced by entertainment companies such as Sony, Paramount Pictures, Warner Bros., and Twentieth Century Fox. Appellants stole the identities of several individuals and used them to establish accounts at various online retail websites, such as Amazon and eBay. Appellants used these accounts to sell the counterfeit box sets they purchased from China. Appellants made their counterfeit DVD sales beginning as early as November 22, 2009, through about July 26, 2013.

The Appellants were indicted on July 14, 2015. In September 2015, Appellants pleaded guilty to conspiring to traffic in counterfeit DVDs, in violation of 18 U.S.C. § 2320(a); two counts of trafficking in counterfeit DVDs, in violation of 18 U.S.C. §§ 2, 2320(a)(1); and importing into the United States counterfeit DVDs by means of a false declaration, in violation of 18 U.S.C. §§ 2, 542.

On February 9, 2016, the government filed a restitution letter from the Motion Picture Association of America, Inc. ("MPAA"). The MPAA's member companies include Walt Disney Studios Motion Pictures, Twentieth Century Fox Film Corporation, Universal City Studios LLC, Paramount Pictures Corporation,

Warner Bros. Entertainment, Inc., and Sony Pictures Entertainment, Inc.

(collectively, the "MPAA members"). The MPAA stated that it seeks restitution,

on behalf of its members, based on damage caused from the sale of counterfeit

DVDs by Appellants. It represented that Appellants sold 10,025 DVD box sets of

television shows. Based on information from a media research company, the

MPAA calculated that, in 2011, the average wholesale value of a genuine DVD

box set of these shows was $16.32.[1] The MPAA calculated a total restitution

amount of $163,608 by multiplying $16.32, the wholesale value of a box set of

genuine DVDs, by 10,025, the number of box sets of counterfeit DVDs sold by

Appellants.

On February 16, 2016, the district court held a joint restitution hearing for

Sterling and Comrie. Kevin Casey, an MPAA regional director for content

protection, testified that the wholesale value of genuine DVD box sets takes into

account the cost of creating and maintaining the intellectual property, including

creating the television show, investment in production costs, maintaining the

television show during its production life, producing, marketing, and shipping the

DVDs, placing counterfeit protections on them so that they cannot be copied, and

---

[1] The MPAA's restitution letter states the average price is for the year 2012, but testimony at the restitution hearing clarified that the wholesale price is based on data from 2011. The MPAA used the 2011 average as a conservative estimate, stating that it was the lowest average wholesale price from the time period 2009-2011.

the intrinsic value of the trademarks and copyrights attached to them. He stated the $16.32 figure was an average value for the box sets based upon information from retailers, such as Best Buy and Walmart retail outlets, that sell genuine DVDs containing the intellectual property of the MPAA members. Mr. Casey also stated the counterfeit DVDs were of very popular titles that made up a large part of the MPAA members' sales.

The government also presented evidence that the counterfeit DVDs were very similar in appearance to genuine DVDs and were sold at a price similar to the price for genuine DVDs. Antonio Fernandez, the investigator with the United States Content Protection Office of the MPAA who investigated Sterling and Comrie's counterfeit sales, testified that the DVDs were packaged and sold in a way that was "meant to fool the public" into believing they were authentic DVDs.

The district court held that the government met its burden to show that the MPAA members were directly and proximately harmed by lost sales that occurred because of Sterling and Comrie's sales of counterfeit box sets. It also held that the government met its burden to show that the MPAA members suffered actual losses in the aggregate amount of $163,608. It ordered restitution in this amount.

## II. STANDARDS OF REVIEW

"We review *de novo* the legality of an order of restitution . . . ." *United States v. Washington,* 434 F.3d 1265, 1267 (11th Cir. 2006). We review for clear

5

error "factual findings underlying a restitution order." *Id.* Whether a person or entity was a victim is a legal conclusion we review *de novo*, but whether a person or entity's harm was directly and proximately caused by the actions of a defendant is a factual finding we review for clear error. *See United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007). The calculation of the amount of restitution owed also is a factual finding that we review for clear error. *See United States v. Martin*, 803 F.3d 581, 595 (11th Cir. 2015) (citing *United States v. Futrell,* 209 F.3d 1286, 1289 (11th Cir. 2000)).

## III. DISCUSSION

The MVRA requires the district court to award restitution to identifiable victims of certain crimes, including property crimes.[2] 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii); *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010). The MVRA further requires that, if property cannot be returned to a victim, the defendant must pay to a victim "the greater of—(I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing . . . ." 18 U.S.C. § 3663A(b)(1)(B)(i). Sterling and Comrie argue that the government failed to present sufficient evidence to support (1) that the MPAA

---

[2] Restitution is required to be ordered without regard to a defendant's ability to pay. *See* 18 U.S.C. § 3664(f)(1)(A) ("[T]he court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant").

6

members are entitled to restitution or (2) the district court's restitution amount. We consider (1) whether the MPAA members were victims under the MVRA; and (2) whether the district court erred in using the wholesale value of authentic DVDs in calculating the restitution amount ordered.

### A.

A "victim" under the MVRA must have been "directly and proximately harmed as a result of the commission of [the defendants'] offense." 18 U.S.C. § 3663A(a)(2); *Martin,* 803 F.3d at 593. "Thus, a victim must have suffered harm, and the defendant must have proximately caused that harm." *Martin*, 803 F.3d at 593. The government has the burden to prove, by a preponderance of the evidence, that a particular entity was a victim of the defendants' offense. *Id.* (citing *United States v. Robertson,* 493 F.3d 1322, 1334 (11th Cir. 2007)). We review for clear error the district court's factual finding regarding proximate cause, and *de novo* the district court's legal conclusion that an entity is a victim. *Id.* (citing *Robertson*, 493 F.3d at 1334).

The district court did not clearly err in finding that Sterling and Comrie's offenses proximately harmed the MPAA members. The statute under which Sterling and Comrie were convicted, 18 U.S.C. § 2320, provides that intellectual property holders are victims of the crime of trafficking in counterfeit goods and thus are entitled to restitution to the extent that they suffered actual loss.

7

*See* 18 U.S.C. §§ 2320(e)(2)(B), 2323(c). The factual findings of the district court were sufficient to support that the MPAA members suffered an actual loss of wholesale sales. The government provided specific evidence that the counterfeit DVDs (1) had indicia of authenticity, including that they were of high quality and looked nearly identical to genuine DVD box sets; (2) were priced similarly to genuine box sets; (3) were popular titles among purchasers and made up a large part of the MPAA members' sales; and (4) were sold in publicly recognized and accepted internet retail sales channels. The government also provided evidence that, based on the counterfeit box sets' appearance and popularity, and the sales channels used by the Appellants, purchasers were fooled into buying counterfeit, rather than genuine, DVDs. Had Sterling and Comrie's customers purchased genuine DVD box sets from an authorized distributor, the MPAA members would have received the wholesale value of box sets sold.

Based on this evidence, the district court did not clearly err in finding that someone who purchased a counterfeit DVD would have purchased a genuine DVD were it not for Sterling and Comrie placing the counterfeit DVD into the stream of commerce and that the MPAA was thus directly and proximately harmed by Sterling and Comrie's conduct. We find that the MPAA members were victims under the MVRA.

B.

This same evidence supports the district court's calculation of the amount of restitution owed. The MVRA requires that, if property cannot be returned to a victim, the defendant must pay to the victim "the greater of—(I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing . . . ." 18 U.S.C. § 3663A(b)(1)(B)(i). In reviewing a district court's calculation of a restitution amount, two principles govern our inquiry. The first is that a victim is entitled to be compensated for the "value" it lost and that "the purpose of restitution is not to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." *Martin*, 803 F.3d at 594 (internal quotation marks omitted) (alteration adopted) (quoting *United States v. Cavallo,* 790 F.3d 1202, 1238 (11th Cir. 2015)); *see Hughey v. United States,* 495 U.S. 411, 416 (1990) ("[T]he ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event . . . ."). "Restitution is not designed to punish the defendant." *Martin*, 803 F.3d at 595 (citing *United States v. Bane,* 720 F.3d 818, 828 (11th Cir. 2013)). "Thus, the amount of restitution owed to each victim 'must be based on the amount of loss *actually* caused by the defendant's conduct.'" *Id.* (quoting *Huff,* 609 F.3d at 1247).

9

The second principle is that a district court's determination of the restitution amount is, by nature, an inexact science. *Id.* (quoting *Huff,* 609 F.3d at 1248). The government need not calculate the victim's actual lost value with "'laser-like precision,' but may instead provide a 'reasonable estimate' of that amount." *Id.* (quoting *United States v. Futrell,* 209 F.3d 1286, 1290 (11th Cir. 2000) (per curiam) (internal quotation marks and citation omitted)). "With those two principles in mind, we review for clear error the district court's factual finding regarding the amount of restitution owed." *Id.* (citing *Futrell,* 209 F.3d at 1289).

The Court finds, on the record in this case, that the wholesale price of the DVDs provides a reasonable estimate of the MPAA members' actual lost value at the time of the loss. The district court found that the counterfeit DVDs had indicia of authenticity, were sold at similar prices to authentic DVDs, and were sold in publicly recognized and accepted internet retail sales channels. The government also provided evidence that the sales of counterfeit DVD box sets displaced the sales of authentic ones. Thus, on the record here, the MPAA members' actual loss of value was reasonably estimated to be the wholesale price of 10,025 authentic

10

DVD box sets.[3] The district court did not clearly err in its calculation of the

amount of restitution owed.[4]

## IV. CONCLUSION

We **AFFIRM** the district court's restitution order.

---

[3] In other cases where there is a displacement of sales, the calculation of restitution may require the application of a credit against the wholesale price for more than *de minimis* cost a wholesaler would have incurred if a counterfeiter did not displace sales by the sale of counterfeit goods.

[4] The process for determining restitution under the MVRA is an important obligation and, if restitution is ordered, it has a direct and often onerous impact on a defendant. The government has the obligation to rigorously investigate and present their restitution facts and position. This obligation is as important as the fairness and advocacy required during trial.