**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13045
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

MICHAEL JAMES HARRELL,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:11-cr-00108-JES-NPM-1

_____

Before JILL PRYOR, BRASHER, and MARCUS, Circuit Judges.

PER CURIAM:

Michael James Harrell, a *pro se* federal prisoner serving a total 744-month sentence for multiple armed bank robbery offenses, appeals the district court's denial of his *pro se* motion for

compassionate release.  On appeal, he argues that the district court abused its discretion in denying his motion because: (1) he established an extraordinary and compelling reason for a sentence reduction under U.S.S.G. § 1B1.13(b)(6) and he is no longer a danger to the community; and (2) it failed to properly apply *Concepcion v. United States*, 597 U.S. 481 (2022).  After careful review, we affirm.

We review the denial of a prisoner's § 3582(c)(1)(A) motion for abuse of discretion.  *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021).  Abuse of discretion review "means that the district court had a range of choice and that we cannot reverse just because we might have come to a different conclusion."  *Id.* at 912 (citation modified).  A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making its determination, makes clearly erroneous factual findings, or commits a clear error of judgment.  *Id.* at 911–12.  A factual finding is clearly erroneous when it is not supported by substantial evidence or when there is "evidence to support it, [but] the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (citation modified).

A district court has no inherent authority to modify a sentence and may do so only when authorized by statute or rule.  *United States v. Puentes*, 803 F.3d 597, 605–06 (11th Cir. 2015).  Under 18 U.S.C. § 3582(c)(1)(A), upon the motion of a defendant who has fully exhausted his administrative rights, a district court may reduce a term of imprisonment "after considering the factors set

forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction," and the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." So, a district court may reduce a term of imprisonment under § 3582(c)(1)(A)(i) "if (1) the § 3553(a) sentencing factors favor doing so, (2) there are 'extraordinary and compelling reasons' for doing so, and . . . (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement." *United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021). The district court may consider these factors in any order, and the absence of one of them forecloses a sentence reduction. *Id.* at 1237–38.

The Sentencing Commission has defined several "extraordinary and compelling reasons" for reducing a term of imprisonment. *See* U.S.S.G. § 1B1.13(b). A defendant's receipt of an "unusually long sentence" may constitute an "extraordinary and compelling reason" in these circumstances:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full

consideration of the defendant's individualized cir-
cumstances.

*Id.* § 1B1.13(b)(6).

In 2013, 18 U.S.C. § 924(c) provided a 7-year mandatory min-
imum sentence for "any person who, during and in relation to any
crime of violence . . . use[d] or carrie[d] a firearm, or who, in fur-
therance of any such crime, possesse[d] a firearm," and brandished
that firearm, along with a 25-year mandatory minimum sentence
for each "second or subsequent conviction under [§ 924(c)]."  18
U.S.C. § 924(c)(1)(A)(ii), (c)(1)(C)(i) (2013).  In 2018, the First Step
Act eliminated the "stacking" of 25-year sentences for first-time of-
fenders who were charged in the same indictment with multiple
§ 924(c) violations.  *Hewitt v. United States*, 145 S. Ct. 2165, 2168–69
(2025); First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194
(2018) ("First Step Act").  After the passage of the First Step Act, the
25-year mandatory minimum sentence provision applies only
where "a violation of [§ 924(c)] . . . occurs after a prior conviction
under [§ 924(c)] has become final."  First Step Act § 403(a); 18
U.S.C. § 924(c)(1)(C)(i).  The First Step Act was made retroactive
"to any offense that was committed before the date of enactment
of [the First Step Act], if a sentence for the offense ha[d] not been
imposed as of such date of enactment."  First Step Act § 403(b).

In *Concepcion*, the Supreme Court concluded that district
courts deciding motions for a reduced sentence under § 404 of the
First Step Act -- which allowed district courts to impose a reduced
sentence for those sentenced for crack cocaine offenses before the

Fair Sentencing Act changed the enhanced statutory penalties for these offenses -- may consider intervening changes of law or fact in exercising their discretion. *See* 597 U.S. at 494–502. In its discussion, the Supreme Court mentioned § 3582(c)(1)(A) as an example of a circumstance where Congress expressly restricted district courts' discretion by requiring them to abide by the policy statements of the Sentencing Commission. *Id.* at 494–95.

The Sentencing Guidelines provide that a district court may grant a motion for compassionate release if the court determines, among other things, that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Section 3142(g) provides that, to reasonably assure the safety of any other person and the community, a court should consider: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including their criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Here, the district court did not abuse its discretion in denying Harrell's motion for compassionate release upon finding that he continued to pose a potential danger to the community. Under the clear error standard, the nature and circumstances of Harrell's offenses supported the district court's factual finding. U.S.S.G. § 1B1.13(a)(2); 18 U.S.C. § 3142(g)(1); *Harris*, 989 F.3d at 911.

In the order denying relief, the district court acknowledged that Harrell was honorably discharged from the Navy, had a security clearance, had completed several educational courses in prison, was working in the prison barber shop, had no drug history, had a low risk level as a high security inmate in a medium security facility, was enrolled in anger management, had a supportive family and recommendations, and did not "appear to have any incidents while incarcerated." The court nonetheless determined that the "nature and circumstances of the armed robberies" Harrell had participated in established his continued potential danger to the community. The court then detailed that Harrell had been the getaway driver for multiple bank robberies and multiple attempted bank robberies; he had cased the banks in person and researched them on his phone before the robberies; he had recruited a co-defendant who was "good at stealing cars quickly"; and he still owed a "considerable amount of restitution."

Indeed, the record reflects that Harrell was charged with and convicted of three bank robberies and three attempted bank robberies. In the three robberies, Harrell's co-conspirators brandished handguns, including semi-automatic weapons, pointed the guns at bank tellers and customers, pushed them to the ground, and threatened them with their lives, stealing tens of thousands of dollars. In one robbery, they knocked a teller unconscious and struck a customer in the head with the barrel of a gun. For his part, Harrell served as getaway driver for each of the robberies and attempted robberies, and, beforehand, cased the inside of at least five banks in person, striking conversations with or being observed by multiple

bank employees who remembered him. In addition, Harrell participated in the theft of at least three vehicles he used as getaway cars, he supplied stolen license plates for some of the getaway cars, and he put gas in the cars. He also arranged gloves, clothing and equipment for the robberies. On this record, we cannot say that the district court clearly erred in finding that based on the "nature and circumstances of the armed robberies" Harrell had participated in, Harrell continued to pose a danger to the community, even when considering the mitigating circumstances. *See Robertson*, 493 F.3d at 1330.

Because the district court's finding that Harrell continued to pose a danger to the community foreclosed his eligibility for a sentence reduction under § 3582(c)(1)(A), *see Tinker*, 14 F.4th at 1237–38, we need not and do not reach Harrell's challenges to the district court's finding that he failed to show an extraordinary and compelling reason for a sentence reduction, including his arguments relying on *Concepcion*. Accordingly, the district court did not abuse its discretion in denying Harrell's motion for compassionate release, and we affirm. *See Harris*, 989 F.3d at 911.

**AFFIRMED.**