[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12805

_____

D.C. Docket No. 1:15-cr-00056-WSD-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TORI K. COLLINS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 26, 2017)

Before MARTIN and JORDAN, Circuit Judges, and COOGLER,[*] District Judge.

JORDAN, Circuit Judge:

_____

[*] Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama, sitting by designation.

Tori Collins pled guilty to conspiracy to accept gratuities with the intent to be influenced or rewarded in connection with a bank transaction, in violation of 18 U.S.C. §§ 215 & 371.  The district court sentenced Ms. Collins to a two-year term of probation.  It also ordered her to pay $251,860.31 to her former employer, Wells Fargo, pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, finding that her conviction qualified as an "offense against property."  Ms. Collins appeals the restitution order, arguing that the MVRA does not apply to her. Ms. Collins also contends that, even if her crime is an "offense against property," restitution should not have been awarded because her conduct did not proximately cause any losses to Wells Fargo.

We affirm the district court's order of restitution.  Ms. Collins facilitated bank transactions that proximately caused Wells Fargo's losses, and she intended to derive an unlawful benefit from the property that was the subject of these transactions.  She therefore committed an "offense against property" as that phrase is understood in its ordinary and contemporary sense.

## I

Ms. Collins worked as a personal banker at a Wells Fargo branch in Atlanta, Georgia.  At some point in early 2013, a man named Gerald Mack visited the branch where Ms. Collins worked.  Mr. Mack, who introduced himself as G. Shakir, told Ms. Collins that he had friends and clients who wished to open new

2

bank accounts, so Ms. Collins gave him her business card for referrals. Mr. Mack's story was a lie. In reality, Mr. Mack was in possession of stolen U.S. Treasury checks. His plan was to cash the checks by depositing them in bank accounts and then withdraw the stolen funds, all with the help of bank employees.

Soon after they met, Mr. Mack and Ms. Collins developed a friendship, and he began to ask her to carry out various bank transactions. Although she knew that the transactions violated bank rules, Ms. Collins did as Mr. Mack requested. She opened accounts under the names of either fictitious persons or the intended recipients of the stolen U.S. Treasury checks. Sometimes she added the payees of the checks to preexisting accounts. She also deposited some of the stolen checks for Mr. Mack and, on the day of the deposits or sometime after, withdrew the stolen funds and took them to him. And she deposited and withdrew funds from accounts that had been opened by Brandon Kelly, another bank employee recruited by Mr. Mack. Once, Ms. Collins handed Mr. Mack the proceeds in the parking lot of the bank. In exchange for her help, Mr. Mack paid Ms. Collins $6,000 and gave her a pair of sneakers.

Because Mr. Mack was depositing stolen U.S. Treasury checks, Wells Fargo had to reimburse a number of the intended payees for their losses. All told, Wells Fargo lost $276,714.71 from the accounts that Ms. Collins opened or from which she facilitated withdrawals.

3

Ms. Collins pled guilty to a single charge of conspiracy in violation of § 371. The object of the conspiracy was the payment and acceptance of gratuities in violation of § 215. The elements of a § 371 conspiracy are an agreement among two or more persons to achieve an unlawful objective; knowing and voluntary participation in the agreement; and the commission of an overt act by a conspirator in furtherance of the agreement. *See United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). As relevant here, the gratuities provision, § 215(a)(2), prohibits an employee of a financial institution from "corruptly accept[ing] or agree[ing] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution."

At Ms. Collins' sentencing hearing, the district court addressed the applicability of the MVRA, which among other things requires restitution for an "offense against property." *See* § 3663A(c)(1)(A)(ii). The district court explained that it had "thought hard about whether" it should look to the elements of the offense or, instead, to the specific facts of the case to determine whether Ms. Collins had committed an "offense against property." *See* D.E. 26 at 5. Ultimately, the district court decided on a "case-by-case evaluation" of the facts and ruled that the crime fell within the scope of the MVRA because Ms. Collins "was charged with a conspiracy, and that conspiracy was in fact intended to deprive people of property that they owned." *Id.* At the conclusion of the

4

sentencing hearing, the district court imposed a two-year term of probation and ordered Ms. Collins to pay $251,860.31 in restitution to Wells Fargo.[1]

## II

The legality of the district court's restitution order is subject to plenary review. *See United States v. Valladares*, 544 F.3d 1257, 1269 (11th Cir. 2008). The district court's underlying factual findings, on the other hand, are reviewed for clear error. *See id.* A federal district court has no inherent authority to order restitution, and may do so only as explicitly empowered by statute. *See id.*

## III

The "primary and overarching purpose" of the MVRA, enacted in 1996, is to "make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006). When the MVRA applies, restitution is mandatory. *See United States v. Martin*, 803 F.3d 581, 593 (11th Cir. 2015). A defendant must pay restitution under the MVRA if she is convicted of a certain covered offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." § 3663A(c)(1)(B). The restitution award must be the

---

[1] Although Wells Fargo suffered $276,714.71 in losses, the district court reduced the restitution figure by $24,854.40. Ms. Collins argued that when she began helping Mr. Mack open accounts and make withdrawals, she did not immediately know that he was depositing stolen U.S. Treasury checks. *See* D.E. 26 at 5–15. The government supported her position, *see id.*, and the district court agreed to subtract the losses Wells Fargo sustained due to the earliest transactions of the conspiracy.

full amount of the victim's loss that was actually and proximately caused by the defendant's conduct, regardless of the defendant's current or anticipated ability to pay. *See United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010). The MVRA, by its own terms, specifies four types of crimes that trigger mandatory restitution: (1) crimes of violence, as defined in 18 U.S.C. § 16; (2) "offense[s] against property," including those "committed by fraud or deceit"; (3) offenses related to tampering with consumer products; and (4) offenses relating to theft of medical products. *See* § 3663A(c)(1)(A).

Ms. Collins argues that her conviction for conspiring to accept bank gratuities does not constitute an "offense against property" under the MVRA. First, she contends that the district court erred by examining the facts of her case, and urges us to adopt a "categorical approach" which considers only the elements of the offense of conviction. Under that approach, Ms. Collins says, mandatory restitution does not apply because none of the elements of her offense are "against property." Second, Ms. Collins maintains that, even if we consider her underlying conduct, her receipt of cash gratuities was not an "offense against property" and was not committed through fraud or deceit. Third, Ms. Collins argues that, in any event, she did not proximately cause Wells Fargo's losses.

6

**A**

What, exactly, is an "offense against property" under the MVRA, § 3663A(c)(1)(A)(ii)?  That is the question of first impression that confronts us in this appeal.

Although the Supreme Court has addressed some provisions of the MVRA, *see, e.g.*, *Robers v. United States*, 134 S. Ct. 1854, 1856 (2014) (analyzing § 3663A(b)(1)(B)), it has yet to explain what constitutes an "offense against property" under the Act.  Cases from our sister circuits, however, reflect a broad spectrum of opinion.

On the narrower end, some circuits have held that, at the very least, an "offense against property" includes criminal activity with the objective of knowingly and intentionally damaging property.  An example is *United States v. Quarrell*, 310 F.3d 664, 678 (10th Cir. 2002) (holding that the defendants' conviction for conspiring to violate the Archaeological Resources Protection Act qualified because, though "not every conspiracy will involve an offense against property," the unlawful objective of the conspiracy at issue was to "illegally excavate public land," in furtherance of which the defendants "knowingly and voluntarily . . . damaged the land").

Other circuits dispense with the intent requirement, approving mandatory restitution whenever an offense results in physical harm to property.  *See, e.g.*,

7

*United States v. Sawyer*, 825 F.3d 287, 292 (6th Cir. 2016) (holding that the defendant's conviction for conspiracy to violate the Clean Air Act, a scheme involving the improper demolition of buildings with asbestos-containing material, was an "offense against property" because it "resulted in the asbestos contamination of nearly 300 acres of land"); *United States v. Brock-Davis*, 504 F.3d 991, 993, 996–98 (9th Cir. 2007) (concluding that the MVRA provided statutory authority, in a case involving a conspiracy to manufacture methamphetamine, to order payment of restitution to "a motel owner for clean-up costs he incurred remediating a motel room in which the defendant had cooked methamphetamine").

Some circuits, however, have ordered mandatory restitution in cases where there is no physical damage to property. The offenses in those cases have involved the intentional deprivation, or attempted deprivation, of another's property. *See, e.g.*, *United States v. Turner*, 718 F.3d 226, 236 (3d Cir. 2013) (holding that a conspiracy to defraud the IRS was an "offense against property" because the defendant had deprived the government of its property, i.e., tax dollars). *Cf. Robers*, 134 S. Ct. at 1856 (though not directly addressing § 3663A(c)(1)(A)(ii), affirming restitution order under the MVRA for conspiracy to commit wire fraud). Indeed, the Ninth Circuit has specifically rejected the argument that the phrase "'against property' requires physical damage to property." *See United States v.*

8

*Luis*, 765 F.3d 1061, 1066 (9th Cir. 2014). It has held that the phrase encompasses all criminal conduct that "infring[es] on a victim's property interest," *id.* at 1065, as was the case in *United States v. Stephens*, 374 F.3d 867, 868, 870–72 (9th Cir. 2004), where it ruled that failing to pay child support qualified because the offense infringed on the other parent's property interest in the omitted payments.

For our part, we have held, albeit without much explanation, that various types of fraud, and their attendant false or misleading representations, are "offense[s] against property." *See, e.g.*, *United States v. Singletary*, 649 F.3d 1212, 1220 (11th Cir. 2011) (wire fraud); *Huff*, 609 F.3d at 1247 (same); *United States v. Dickerson*, 370 F.3d 1330, 1335 (11th Cir. 2004) (same).

As the wide range of opinions in these cases illustrates, we lack a conclusive definition. Without a binding directive, we now turn to the statute and apply ordinary rules of statutory construction.

**B**

Our construction of § 3663A(c)(1)(A)(ii) begins "with the language of the [provision] itself." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc). Where, as here, a statute does not define a term or phrase, those words generally take "their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." *Perrin v. United States*, 444 U.S. 37, 42 (1979) (citation omitted).

9

We start with the rather unremarkable observation that "against" is not the same as "relating to" or "concerning." *See* Webster's New World College Dictionary 26, 288, 1132 (3d ed. 1996). The latter two (and their synonyms) sweep much more broadly, and would encompass offenses with little more than some connection to property.

This distinction matters because, in the process of reading a statute, it is our "duty . . . to give effect, if possible, to every clause and word[,] . . . avoiding . . . any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883). Indeed, we "must presume that a legislature says in a statute what it means." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Had Congress intended § 3663A(c)(1)(A)(ii) to apply to all criminal acts involving property, even if only tangentially, we think it would have said so. But Congress did not, and the more restrictive language employed counsels against an expansive construction of § 3663A(c)(1)(A)(ii).

We believe that a more faithful reading respects the connotation of directedness engendered by "against." *See* Webster's New World College Dictionary 26 (3d ed. 1996). Property, therefore, must serve as the object of the offense, not simply a collateral component. *See* Black's Law Dictionary 371 (6th ed. 1990) (defining "crime against property" as "a crime, the object of which is

10

property as contrasted with person; e.g., larceny"). At its simplest, this understanding includes offenses in which the defendant intends to damage another's property, as was the case in *Quarrell*, 310 F.3d at 678. *See* Webster's New World College Dictionary 26 (3d ed. 1996) (defining "against," in part, as "toward so as to press on or strike"). It also includes situations where the defendant seeks to derive an unlawful benefit from another's property or otherwise deprive a person of his property, therefore acting "in opposition to" or "contrary to" the classic property rights of ownership and possession. *See id.* (also defining "against" as "in opposition to; contrary to"). Under any of these readings, however, criminal conduct does not necessarily qualify as an "offense against property" solely because it results in property damage or because someone suffers a loss at some point during its execution. [2]

In our view, the framework of § 3663A supports this interpretation. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Generally speaking, § 3663A(b) prescribes what an order of restitution must require of a defendant, with subsection (b)(1) specifying that, "in

---

[2] For purposes of the MVRA, the words "offense" and "crime" are essentially interchangeable. The MVRA itself cross-references the two words. *Compare* § 3663A(a)(1) (requiring courts to order restitution when "a defendant [is] convicted of an offense described in subsection (c)"), *with* § 3663A(c) (explaining that mandatory restitution applies to "any offense" that is "a crime of violence, as defined in [§] 16," which, in turn, defines "crime of violence" as "an offense" with certain characteristics).

11

the case of an offense resulting in damage to or loss or destruction of property of a victim," the defendant must either return the property or pay the victim some amount to compensate for the loss. Equating "offense[s] against property" in subsection (c)(1) to "offense[s] resulting in damage to or loss or destruction of property of a victim" in subsection (b)(1) collapses the two subsections. We do not think that is what Congress intended, for it could have easily used the language in subsection (b)(1) to define the covered offenses.

This construction further harmonizes § 3663A with its discretionary restitution counterpart, 18 U.S.C. § 3663. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (directing courts to interpret statutes as part of "a symmetrical and coherent regulatory scheme" and to "fit, if possible, all parts into an harmonious whole") (citations and internal quotation marks omitted). Under § 3663, courts can impose, on a discretionary basis, restitution for any offense under Title 18 (and other miscellaneous statutes), except that for "an offense described in [§] 3663A(c)," the court has no discretion and restitution must be imposed. *See* § 3663(a)(1)(A).

Significantly, § 3663(b)(1) mirrors § 3663A(b)(1), providing that "in the case of an offense resulting in damage to or loss or destruction of property of a victim," the defendant "may" be ordered to return the property or pay the victim some amount for the loss. If "offense against property" under § 3663A(c)(1)(A)(ii)

12

means any "offense resulting in damage to or loss or destruction of property," § 3663(b)(1) would largely be meaningless, because offenses resulting in damage to or loss of property would always be "against property" and never eligible for discretionary restitution. Rather than reading § 3663A(c)(1)(A)(ii) to nullify much of § 3663, our construction allows "the two . . . to stand together." Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union 58 (1868).

Excluding offenses with only incidental property loss is also more consistent with the common-law roots of the phrase "offense against property." *See, e.g.*, *California v. Minjares*, 443 U.S. 916, 927 (1979) (Rehnquist, J., dissenting) (describing "crimes against person and property" as "the traditional common-law crimes"). When Congress "uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." *United States v. Turley*, 352 U.S. 407, 411 (1957). *See generally* Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 535 (1947) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.").

At common law, offenses or crimes against property referred to a specific set of criminal conduct: "larceny, embezzlement, cheating, cheating by false pretenses,

13

robbery, receiving stolen goods, malicious mischief, forgery, and uttering forged instruments." Black's Law Dictionary 1251 (10th ed. 2014) (defining "offense against property"). Merely damaging or destroying property would not have met the definition for any of these offenses. For example, malicious mischief, the closest common-law offense for damaging another's property, required intentional destruction or damage. *See id.* at 1101. By borrowing from the annals of common law, Congress "presumably . . . adopt[ed] the cluster of ideas that were attached," *Morissette v. United States*, 342 U.S. 246, 263 (1952), including the common-law understanding that an "offense against property" is not committed simply because criminal conduct occasions property loss.

The clause "including those committed by fraud or deceit" does not broaden the meaning of "offense against property." Introduced by the illustrative "including," the phrase refers to conduct that is a subset of "offense against property," and not an independent covered offense under the MVRA. *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."). So, "*those* [offenses against property] committed by fraud or deceit" must still have property as their object to qualify. *See* § 3663A(c)(1)(A)(ii) (emphasis added).

14

## C

We next consider the analytical framework district courts should apply to determine whether an offense is against property for purposes of the MVRA.  The parties advocate two different approaches.  The one advocated by the government and applied by the district court considers the factual circumstances underlying the offense of conviction.  The other, urged by Ms. Collins, is the categorical approach, in which courts limit their analysis to the elements of the offense of conviction.

Ms. Collins argues that in *United States v. Keelan*, 786 F.3d 865 (11th Cir. 2015), we held that the categorical approach governs the determination of whether a crime falls within one of the MVRA's enumerated categories.  In our view, she overstates our holding in *Keelan*.  The defendant in *Keelan*, who had been convicted of knowingly using means of interstate commerce to persuade a minor to engage in sexual activity, challenged the district court's order of restitution pursuant to § 3663A(c)(1)(A)(i), which provides for mandatory restitution for any offense that is a "crime of violence, as defined in [§] 16."  *See Keelan*, 786 F.3d at 869–70.  We had previously applied the categorical approach to determine whether a conviction qualifies as a crime of violence under § 16.  *See Dixon v. U.S. Att'y Gen.*, 768 F.3d 1338, 1342–43 (11th Cir. 2014).  And because § 3663A(c)(1)(A)(i) defines "crime of violence" by explicit reference to § 16, we applied the

15

categorical approach to determine whether the *Keelan* defendant's offense was a "crime of violence" for purposes of § 3663A(c)(1)(A)(i). *See Keelan*, 786 F.3d at 869–72.

Here, however, the MVRA does not define "offense against property" by referring to another statute, and we have never considered whether to apply the categorical approach to determine whether an offense qualifies as an "offense against property" in any context. As a result, *Keelan* does not resolve whether sentencing courts must apply the categorical approach to determine whether an offense was an "offense against property" for purposes of § 3663A(c)(1)(A)(ii). We must decide that issue for the first time here.

The text of § 3663A(c)(1)(A)(ii) persuades us to reject the categorical approach in this context. The provision uses language that the Supreme Court has previously said suggests consideration of the underlying conduct. In *Taylor v. United States*, 495 U.S. 575 (1990), the Court was tasked with defining "burglary" under the sentencing enhancement provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e), and setting forth the method by which sentencing courts were to determine whether a defendant's prior state-law burglary conviction qualified for the enhancement. Relying in part on the word "element" in § 924(e), the Court ultimately decided that, with rare exception, sentencing courts should apply the categorical approach, looking "only to the statutory definitions of the prior

16

offenses, and not to the particular facts underlying those convictions." *See Taylor*, 495 U.S. at 600–01.  In adopting the categorical approach, the Court also relied on the fact that § 924(e) refers to a person who "has three previous convictions" for certain types of crimes, and not to a person who has "committed" those crimes.  *Id.* The Court, in other words, believed that the word "committed" would have served as a congressional directive to sentencing courts to consider the underlying conduct.  *See id.*  And so, describing a covered offense in terms of how it was "committed" suggests consideration of the underlying conduct, without which we could not know how an offense was actually committed or carried out.

Unlike § 924(e), § 3663A(c)(1)(A)(ii) does not define an "offense against property" by referring to the "element[s]" of the offense.  Further, it describes an "offense against property" by reference to how it was "committed"—specifically, it specifies that an "offense against property" "include[s] any offense committed by fraud or deceit."  18 U.S.C. § 3663A(c)(1)(A)(ii).  We agree with the premium the Supreme Court placed on the word "committed" and the absence of the word "element," and we therefore decline to apply the categorical approach to determine whether a conviction qualifies as an "offense against property" under § 3663A(c)(1)(A)(ii).[3]

---

[3] The presence or absence of the word "element" in a statute does not, on its own, resolve the issue here.  Indeed, we have applied the categorical approach in cases where the federal sentencing statute makes no mention of "elements."  *See, e.g.*, *United States v. James*, 430 F.3d

17

Our decision today to eschew the categorical approach puts us in line with a number of decisions by our sister courts, which, though not expressly discussing the issue, have focused on the conduct underlying the offense of conviction instead of the elements of the crime. *See, e.g.*, *Luis*, 765 F.3d at 1065–66; *United States v. Pescatore*, 637 F.3d 128, 138–39 (2d Cir. 2011); *Quarrell*, 310 F.3d at 678.

## D

With a definition and analytical framework in hand, we now turn to the question of whether Ms. Collins committed an "offense against property." In cases such as this one, where the conviction is for conspiracy, we focus on the offense that was the object of the unlawful scheme. *See Singletary*, 649 F.3d at 1220 (looking to the "objects of the conspiracy" to determine the applicability of the MVRA). The unlawful conduct here was that Ms. Collins, as an "employee . . . of a financial institution," "corruptly accept[ed] or agree[d] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution." *See* § 215(a)(2). Ms. Collins' predicate offense, in so many words, was the illegal acceptance of gratuities.

We have previously noted that there may be a question about whether bribery is an "offense against property" under the MVRA. *See United States v.*

---

1150, 1154 (11th Cir. 2005) (applying the categorical approach to determine whether a particular offense is a "serious drug offense" under the ACCA).

*McNair*, 605 F.3d 1152, 1221 n.107 (11th Cir. 2010).  As with bribery, it is not readily apparent to us that a gratuities offense will always trigger mandatory restitution under the MVRA.  For example, there may be situations where the government establishes criminal liability under § 215(a)(2) without demonstrating that any improperly influenced transaction implicated someone else's property.

We need not address all variants of a gratuities offense because, in this case, the evidence demonstrates that Ms. Collins sought to derive an unlawful benefit from the property at play in the bank transactions she corruptly facilitated. Specifically, Ms. Collins admitted that she withdrew $69,000 from a bank account for Mr. Mack.  *See* D.E. 25 at 42–44.  At the time of the withdrawal, that money belonged to Wells Fargo.  *See Shaw v. United States*, 137 S. Ct. 462, 466 (2016) (explaining that a bank owns the deposited funds).  By accepting Mr. Mack's cash payment in connection with transactions such as this one, Ms. Collins intentionally derived an unlawful pecuniary gain by taking property belonging to Wells Fargo, thereby making her gratuities offense an "offense against property."  *Cf.* Black's Law Dictionary 454 (10th ed. 2014) (defining "crime against property" as an "offense[ ] in which the perpetrator seeks to derive an unlawful benefit from . . . another's property without the use or threat of force").

19

**E**

Almost as an afterthought, Ms. Collins contends that, to the extent she committed an "offense against property," she did not proximately cause Wells Fargo's losses. She devotes most of her briefing on this issue to rehashing her arguments on the proper analytical approach. *See* Br. of Appellant at 19–21. When she finally gets around to the causation analysis, she argues, in one conclusory paragraph with no explanation, that Wells Fargo's losses stemmed from Ms. Mack's fraud and "perhaps from [her] . . . witting or unwitting assistance," but not from her acceptance of gratuities. *See id.* at 21. Though her failure to fully brief this issue arguably constitutes abandonment, *see Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 632 F.3d 1195, 1201 n.7 (11th Cir. 2011) (explaining that some "arguments . . . are so conclusory that they are deemed abandoned"), we address it anyway.

Under the MVRA, sentencing courts must order restitution for a victim's "actual loss directly and proximately caused by the defendant's offense of conviction." *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012). The "[d]efendant's conduct need not be the sole cause of the loss," but it cannot be "too attenuated (either factually or temporally)." *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007) (citations omitted). Here, the government proved that Wells Fargo's loss "would not have occurred but for" Ms. Collins' conduct. *Id.*

20

The question, then, is whether Ms. Collins' actions proximately caused Wells Fargo's losses. The district court found that they did, *see* D.E. 26 at 4–15, and we review this factual finding for clear error. *See Robertson*, 493 F.3d at 1334.

We have addressed proximate causation in the MVRA context before. In *United States v. Washington*, 434 F.3d 1265, 1266 (11th Cir. 2006), the defendant robbed a bank and fled. Several police cars were damaged in the ensuing chase. The district court ordered the defendant to pay the police department restitution for the property damage. *See id.* at 1266–68. On appeal, the defendant did not dispute that the MVRA applied to his bank robbery conviction, but he argued that his offense was not the proximate cause of the police department's property damage. *See id.* at 1268. We rejected this argument and affirmed the order of restitution because flight was a natural component of bank robbery and because the defendant could have foreseen that any ensuing high-speed chase would result in property damage. *See id.* at 1268–69.

Wells Fargo's losses here were even more foreseeable than the police department's in *Washington*, where at least the defendant could not have known with certainty that various police cars would be damaged. By contrast, Wells Fargo having to reimburse its customers for the fraud enabled by its own employee was the natural—if not inevitable—consequence of Ms. Collins' actions. Moreover, Ms. Collins directly facilitated Mr. Mack's scheme by processing the

21

withdrawals of the funds on his behalf.  She even physically effectuated some of Wells Fargo's losses by walking money out the bank's doors, allaying any concern that those losses were "too [physically or temporally] attenuated."  *See Robertson*, 493 F.3d at 1334.  Given Ms. Collins' role as a bank employee, we do not believe that the district court clearly erred in finding that she could have reasonably foreseen Wells Fargo's losses.

## IV

For these reasons, we affirm the district court's order of restitution under the MVRA.

**AFFIRMED**.

22