FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MARCO MANUEL LUIS,
*Defendant-Appellant*.

No. 13-50020

D.C. No.
3:10-cr-02967-IEG-5

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Senior District Judge, Presiding

Argued and Submitted
March 6, 2014—Pasadena, California

Filed August 28, 2014

Before: Richard A. Paez, N. Randy Smith,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by N.R. Smith

## SUMMARY[*]

### Criminal Law

The panel vacated in part and remanded for recalculation an order of restitution to CitiGroup, and affirmed the district court as to remaining issues, in an appeal in which the defendant, who pleaded guilty to conspiracy to engage in monetary transactions in violation of 18 U.S.C. §§ 1956(h) and 1957 for his part in the purchase of two parcels of real property with fraudulently obtained loans, challenged orders of restitution to CitiGroup, a loan originator, and JP Morgan Chase, a loan purchaser.

The panel held that because the defendant's crimes infringed on Chase's and Citi's property interests, they were offenses "against property" under the Mandatory Victim Restitution Act. The panel also held that district court did not abuse its discretion in determining that Chase was a victim under the Act, because the fraudulent nature of the loans was concealed at the time Chase purchased them. The panel rejected the defendant's contention that "against property" requires physical damage to property. The panel also rejected the defendant's contention that even if actually engaging in transactions with proceeds from unlawful activity constitutes an offense against property, conspiracy to engage in such transactions does not.

Regarding Rancho Santa Fe property loans, the panel (1) held that the district court erred by calculating Chase's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

restitution based on the unpaid principal loan balance rather than the value of the loans when Chase purchased them; and (2) rejected as foreclosed by *Robers v. United States*, 134 S. Ct. 1854 (2014), the defendant's argument that the district court erred by offsetting the restitution amount owed to Chase by the foreclosure sale price rather than subtracting the fair market value assessment submitted by the defendant.

Regarding Citi's loss in connection with Palomar property loans, the panel likewise rejected the defendant's argument that the district court should have subtracted from the unpaid principal balance the fair market value of the property at the time Citi could have foreclosed on it instead of the sale price of the first mortgage loan. The panel rejected the defendant's contention that Citi's choice to sell the loan rather than foreclose on the property constituted an intervening cause.

## COUNSEL

Todd W. Burns, Burns and Cohan, San Diego, California, for Defendant-Appellant.

Lawrence E. Spong (argued), Assistant United States Attorney; Bruce R. Castetter, Assistant United States Attorney Chief, Appellate Section Criminal Division; Laura E. Duffy, United States Attorney, United States Attorney's Office, San Diego, California, for Plaintiff-Appellee.

**OPINION**

N.R. SMITH, Circuit Judge:

The Mandatory Victim Restitution Act ("MVRA") requires a district court to order restitution when (1) a defendant commits an "offense against property," and (2) there is a "victim." *See* 18 U.S.C. § 3663A(a)(1), (c)(1). We affirm the district court's determination that both requirements were met in this case.

Marco Luis pleaded guilty to two counts of conspiracy to engage in monetary transactions in property in violation of 18 U.S.C. §§ 1956(h) and 1957 for his part in the purchase of two parcels of real property with fraudulently obtained loans. Because Luis's crimes infringed on JP Morgan Chase's ("Chase") and CitiGroup's ("Citi")[1] property interests, they were offenses against property. *See United States v. Stephens*, 374 F.3d 867, 871 (9th Cir. 2004). Also, the district court did not abuse its discretion in determining that Chase was a victim, because the fraudulent nature of the loans was concealed at the time Chase purchased them. *See United States v. Yeung*, 672 F.3d 594, 603 (9th Cir. 2012), *overruled in part on other grounds by Robers v. United States*, 134 S. Ct. 1854 (2014).

We affirm the calculation of restitution owed to Citi, because the district court deducted from the base restitution amount the actual amount received in mitigation of the victim's loss. *See Robers*, 134 S. Ct. at 1856. However, we vacate and remand for the district court to recalculate the amount owed to Chase, because the district court applied a

---

[1] CitiGroup includes CitiMortgage and CitiBank.

formula for a loan originator, although Chase had purchased the loans. *See Yeung*, 672 F.3d at 602.

## FACTS & PROCEDURAL HISTORY

Luis and Joshua Hester, long-time friends, began investing in real property together. As a real estate agent, Luis had the know-how. As a career marijuana dealer, Hester had the cash.

In 2006, Luis and Hester purchased a parcel of real property in Rancho Santa Fe, California for $2,050,000. Luis filled out the purchasing paperwork, using Hester's girlfriend (Kelsey Wiedenhoefer) as the straw buyer. Luis falsely stated that Wiedenhoefer was self-employed and earned $420,000 per year. Luis also falsely represented Wiedenhoefer's employment history and the source of the down payment and future monthly payments. Lastly, Luis obtained a pre-approval letter from Dennis O'Connor, which falsely stated O'Connor had prepared Wiedenhoefer's tax returns and could verify that she was successfully self-employed. Relying on this paperwork, Washington Mutual approved two mortgages, in the amounts of $1,640,000 and $204,7500. Thereafter, Hester made the down payment and monthly mortgage payments using Wiedenhoefer's bank account. The payments were interest only; Hester never paid any principal.

In 2007, Luis and Hester purchased ten acres of real property in Palomar, California for $560,000. Again, Luis filled out the purchasing paperwork. This time, he used Jay Hansen as the straw buyer. Luis knew that Hansen delivered marijuana to Hester's customers, but falsely stated that Hansen made $12,500 a month detailing cars. Citi issued two mortgages in the amounts of $448,000 and $112,000, making

the Palomar property 100% financed. Hester provided Hansen with funds for the closing costs and monthly mortgage payments.

In December 2008, the Palomar loans went into default. In September 2009, the Rancho Santa Fe loans went into default. The fraudulent nature of these loans was discovered during a larger investigation of Hester's illegal marijuana distribution; Hansen, Hester, Wiedenhoefer, and Luis were then charged criminally in connection with the purchase of the two properties.

On March 19, 2012, Luis pleaded guilty to two counts of conspiring to engage in prohibited monetary transactions in violation of 18 U.S.C. §§ 1956(h) and 1957. On August 27, 2012, the district court sentenced him to 48 months in custody. The court also ordered restitution in the amount of $545,029.90. Luis provided this amount of loss to the district court in his sentencing memorandum.

On September 5, 2012, Luis requested the restitution order be vacated and reconsidered "based on an appropriate record, whether, to whom, and how much restitution should be ordered." The district court granted this request and held hearings regarding restitution. Witnesses from Chase and Citi testified at the hearings.

Patrick M. Carr, vice president and controller for Chase, testified that Washington Mutual Bank originally authorized the loans on the Rancho Santa Fe property for $1,640,000 (first mortgage) and $204,750 (second mortgage). On September 25, 2008, Chase purchased Washington Mutual Bank's assets and liabilities. This purchase included a group of loans totaling about $120 billion of unpaid debt. Chase

paid about $90 billion for that group of loans, which included the Rancho Santa Fe property loans. The outstanding unpaid principal balance on the Rancho Santa Fe property loans remained $1,844,750. In September 2011, Chase foreclosed on the Rancho Santa Fe property. (On the foreclosure sale date, the unpaid principal balance of the loans remained the same.) At the sale, Chase bid $1,228,815 and purchased the property.

Cynthia Swan, a business operations analyst with Citi, testified that Citi originally authorized the Palomar Mountain property loans for $448,000 (first mortgage) and $112,000 (second mortgage). Around December 2008, these loans went into default. Citi elected not to foreclose on the property. Rather, in April 2010, Citi sold the first mortgage for $230,068. At the time of the sale, the Palomar property first mortgage's unpaid principal balance was $447,977. Citi wrote off the unpaid balance of the second mortgage, $111,858.

The district court ordered $615,935 in restitution to Chase. The court subtracted the Rancho Santa Fe property foreclosure sale price ($1,228,815) from the unpaid principal balance on the first mortgage ($1,640,000), resulting in a loss of $411,185 on the first mortgage. The court added this loss to the unpaid principal balance on the second mortgage ($204,750).

The district court ordered $329,767 in restitution to Citi. The court subtracted the sale price of the first mortgage ($230,068) from the unpaid principal balance on the first mortgage ($447,977), a loss of $217,909. The court added this loss to the unpaid principal balance on the second

mortgage ($111,858). Luis timely appealed the restitution order.

## STANDARD OF REVIEW

"The legality of an order of restitution is reviewed *de novo*, and factual findings supporting the order are reviewed for clear error." *United States v. Brock-Davis*, 504 F.3d 991, 996 (9th Cir. 2007) (citing *United States v. Hackett*, 311 F.3d 989, 991 (9th Cir. 2002); *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir. 1998)). "Provided that it is within the bounds of the statutory framework, a restitution order is reviewed for abuse of discretion." *Id.*

## DISCUSSION

### I.   Restitution was mandatory

The MVRA requires restitution when (1) sentencing a defendant convicted of "an offense against property under [Title 18], including any offense committed by fraud or deceit"; and (2) there is "an identifiable victim or victims [who] suffered . . . pecuniary loss." 18 U.S.C. § 3663A(a)(1), (c)(1). Luis claims the district court erred in finding both elements satisfied. We disagree.

### A. "Offense against property"

Luis pleaded guilty to conspiring to engage in monetary transactions in property derived from criminal activity under 18 U.S.C. §§ 1956(h) and 1957. The MVRA does not define "offense against property." *See* 18 U.S.C. § 3663A. However, we have held that "against property" means infringing on a victim's property interest. *See Stephens*, 374 F.3d at 871. In

*Stephens*, we determined that failure to pay child support in violation of 18 U.S.C. § 228 constitutes an offense against property. *Id.* at 868, 871. Omission of required support payments infringed on the other parent's right to receive the payments, a property interest. *Id.* at 871. The failure to pay child support "involv[ed] pecuniary loss" and therefore constituted an offense against property. *See id.* Here, quite simply, Chase and Citi suffered pecuniary loss when the Rancho Santa Fe property and Palomar property loans went unpaid. Luis's offenses occasioned these losses.

Luis's argument that "against property" requires physical damage to property is unavailing. *See United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010) (holding that a conviction for mail fraud invoked the MVRA); *c.f. United States v. Rizk*, 660 F.3d 1125, 1134–37 (9th Cir. 2011) (applying the MVRA to offenses arising out of a mortgage fraud scheme, which included conspiracy, bank fraud, and loan fraud). Moreover, in *United States v. Lazarenko*, 624 F.3d 1247 (9th Cir. 2010), we agreed with the parties that money laundering and conspiracy to launder money constituted offenses against property. *Id.* at 1249–50. A conviction under 18 U.S.C. § 1957 is for money laundering. *United States v. Bush*, 626 F.3d 527, 529 (9th Cir. 2010); *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003).

We are not alone in this conclusion. Other Courts of Appeals agree that convictions under § 1957 are subject to the MVRA. *See, e.g.*, *United States v. Diaz*, 245 F.3d 294, 296, 312 (3d Cir. 2001); *United States v. Polichemi*, 219 F.3d 698, 707, 714 (7th Cir. 2000).

Luis also argues that, even if actually engaging in transactions with proceeds from unlawful activity constitutes

an offense against property, conspiracy to engage in such transactions does not. However, that distinction does not matter. Conspiracy to launder money triggers the "same penalties" as actual money laundering, 18 U.S.C. § 1956(h), and MVRA restitution is a "penalty," *see id.* § 3663A(a)(1).

### B. "Victim"

The district court found Chase and Citi were victims for MVRA purposes. Luis only challenges this finding as to Chase.[2] He argues that the government failed to meet its burden to show actual loss suffered by Chase. Luis is incorrect.

"The government bears the burden of proving that a person or entity is a victim for purposes of restitution." *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008). Under the MVRA, a victim is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). A loan purchaser can be a victim. *See Yeung*, 672 F.3d at 602. We review a determination that a person or entity is a victim for abuse of discretion. *See id.* at 603.

The district court does not abuse its discretion in finding a loan purchaser is a victim, if the defendant fraudulently obtained the loan and the fraud was not discovered until after the purchase. *Id.* This makes good sense, because the loan purchaser would not know that the loan's value was less than

---

[2] Because Luis does not argue that Washington Mutual and Citi were not "directly harmed" by criminal conduct in the course of the money laundering conspiracy, § 3663A(a)(2), we consider only whether a loan purchaser may be a victim of a fraudulent scheme.

it would otherwise appear to be, due to the unlikelihood of debtor payment. *See id.*

Here, Chase purchased the Rancho Santa Fe property loans on September 25, 2008. The fraudulent nature of the loans and the fact that they were being paid with illicit gains did not come to light until July 2010, when the government filed charges against Luis and his co-defendants. Consequently, the district court did not abuse its discretion in concluding Chase was a victim for MVRA purposes.[3]

## II.  Restitution calculation

### A.  Rancho Santa Fe property loans

#### 1.  Calculation based on unpaid principal balance

Luis contends that the district court erred by calculating restitution based on the unpaid principal loan balance rather than the value of the loans when Chase purchased them. On this point, we agree with Luis.

Different formulas apply to determine a victim's actual losses on loans, depending on whether the victim is a loan originator or a loan purchaser. *Id.* at 601–02 (Calculation rules "require some adjustment . . . where the victim is the

---

[3] Luis also argues that Chase "made out like a bandit" when it purchased Washington Mutual's assets and liabilities, which included the Rancho Santa Fe property mortgages. According to Luis, the profit Chase made on the *overall* purchase of the assets and liabilities of another bank means Chase did not suffer loss as to the Rancho Santa Fe mortgages. He offers no support for his novel argument, and we therefore deem it waived. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1069 n.18 (9th Cir. 2000) (Failure to cite governing law waives the issue.).

loan purchaser as opposed to the loan originator."). The restitution formula for a loan originator begins with the amount of the unpaid principal balance due on the fraudulent loan, *see id.* at 601, while the restitution formula for a loan purchaser begins with "how much the victim paid for the fraudulent loan (or the value of the loan when the victim acquired it)," *id.* at 602. The applicable amount is then offset "by the amount of money the victim received in selling the collateral." *Robers*, 134 S. Ct. at 1856. Applying the loan originator formula when the victim is a loan purchaser who paid less than the unpaid principal amount to purchase the loan "would cause the victim to receive an amount exceeding its actual losses . . . [and] would constitute plain error." *Yeung*, 672 F.3d at 602.

Here, Chase purchased the loans; it did not originate them. Yet the district court applied the loan originator formula: It calculated restitution by subtracting the foreclosure sale price of the property from the unpaid principal balance on the loan. Thus, *Yeung* compels us to vacate the restitution order with respect to the Rancho Santa Fe property loan calculation and remand for the district court to recalculate Chase's loss, based on "how much [Chase] paid for the fraudulent loan[s] (or the value of the loan[s] when [Chase] acquired [them])." *See id.*

## 2.  Calculation based on Chase's floor bid

Luis also argues that the district court erred by offsetting the restitution amount owed to Chase by $1,228,815 (Chase's floor bid/the foreclosure sale price) rather than subtracting $1,598,847 (the fair market value assessment Luis submitted). However, *Robers v. United States*, 134 S. Ct. 1854 (2014)—decided after oral argument took place in the instant

appeal–dooms this argument, holding that "a sentencing court must reduce the restitution amount by the amount of money the victim received in selling the collateral, *not the value of the collateral when the victim received it*." *Id.* at 1856 (emphasis added).

## B. Palomar property loans

Luis makes a similar argument concerning Citi's loss. He contends the district court should have subtracted from the unpaid principal balance the fair market value of the Palomar property at the time Citi could have foreclosed on it, instead of the sale price of the first mortgage loan. Again, *Robers* substantiates the district court's calculation method. *See id.* The district court must subtract the actual amount received in mitigation of the loss. *See id.* Here, the district court did just that.

Nor does Citi's choice to sell the loan rather than foreclose on the property constitute an intervening cause. "The basic question that a proximate cause requirement presents is 'whether the harm alleged has a sufficiently close connection to the conduct' at issue." *Id.* at 1859 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014)). Foreseeable causes usually do not break the causal chain. *See id.* Here, selling defaulted loans, a very common method of mitigating loss, was foreseeable. Further, Luis's criminal conduct directly caused the defaults. *See generally United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir. 2001) (discussing "losses at least one step removed from the offense conduct"). Thus, the

district court did not abuse its discretion in calculating restitution on the Palomar property loans.**[4]**

## CONCLUSION

We **VACATE in part** and **REMAND** the restitution order for recalculation of restitution as to the Rancho Santa Fe loans. As to the remaining issues, we **AFFIRM**.

The parties shall bear their own costs.

---

**[4]** While Luis also claims *Apprendi* error, he concedes that *United States v. Green*, 722 F.3d 1146 (9th Cir. 2013) forecloses his claim.