DIAZ, Circuit Judge,
dissenting as to Parts III.D. and IV:
The court holds today that we know enough to affirm the award of restitution to Bank of America in the amount of $1,385,444.83—the principal balance remaining on Ritchie’s mortgage with Countrywide after the property’s foreclosure sale. I disagree. On the limited record *219 before us, Bank of America, as a successor lender, stands to gain an impermissible “windfall” from the restitution award. Because I would calculate the amount of restitution due to Bank of America by starting with the amount it paid to obtain Ritchie’s mortgage loan, I respectfully dissent.
In writing separately, I am mindful of the primary goal of ordering restitution under the MVRA: “to restore a victim, to the extent money can do so, to the position [the victim] occupied before sustaining injury.” United States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006). The statutory language of the MVRA reflects this compensatory goal, as the statute “does not permit restitution awards to exceed a victim’s loss.” United States v. Beydoun, 469 F.3d 102, 107 (5th Cir. 2006); see 18 U.S.C. § 3664(f)(1)(A) (emphasis added) (“[T]he court shall order restitution to each victim in the full amount of each victim’s losses.... ”). As such, a “court may not award the victim a windfall” under the MVRA. Beydoun, 469 F.3d at 107.
Consistent with the MVRA’s restorative purpose, virtually all of the circuits to have considered the question hold that a successor lender (as I believe Bank of America to be here) is entitled to restitution under the MVRA only for the amount it actually paid for the note, not the outstanding principal balance of the note. See United States v. Martin, 803 F.3d 581, 595 (11th Cir. 2015) (“[A] successor lender’s restitution award should turn on how much it paid to acquire the mortgage.”); United States v. Howard, 784 F.3d 745, 751 (10th Cir. 2015) (paying downstream lender restitution calculated using the amount of original mortgage note “would create an unlawful windfall for the downstream lender”); United States v. Beacham, 774 F.3d 267, 279 (5th Cir. 2014) (“[T]he district court abused its discretion by using the original loan amounts to calculate restitution” for successor lender.); United States v. Chaika, 695 F.3d 741, 748 (8th Cir. 2012) (Whether or not mortgages “were sold by the initial lender in a secondary mortgage market ... greatly alters the determination of the victims’ actual loss.”); United States v. Yeung, 672 F.3d 594, 602 (9th Cir. 2012) (“To calculate a victim’s restitution award using the outstanding principal balance of the loan, if the victim only paid a fraction of that amount to obtain the loan on the secondary market, would cause the victim to receive an amount exceeding its actual losses.”) abrogated on other grounds by Robers, 134 S.Ct. 1854. But see United States v. Rivernider, 828 F.3d 91, 116 (2d Cir. 2016) (rejecting, on plain error review, defendants’ argument that restitution award to downstream lenders was erroneously based on unpaid principal loan balance rather than amount actually paid for loan where, “[n]othing in the record permits us to assess the likelihood that all or any of the loans would have been sold at a discount, at face value, or at a premium”).
The government contends, however, that these cases, “all of which involve lenders who purchased loans on the secondary market, rather than the lending bank itself, are wholly inapposite.” Appellee’s Br. at 27. At oral argument, the government stressed that Bank of America “became Countrywide,” and now stands in a different position from a successor lender who purchases distressed loans one at a time on the secondary market. The majority adopts this view as well. For purposes of calculating restitution under the MVRA, however, I believe this distinction makes no difference.
On this point, I am persuaded by the Ninth Circuit’s reasoning in United States v. Luis, 765 F.3d 1061 (9th Cir. 2014). As the majority recounts, the defendant in *220 Luis pleaded guilty to two counts of conspiring to engage in prohibited monetary transactions, arising out of his purchase of real property with fraudulently obtained loans. Id. at 1063. As relevant here, the defendant applied for and obtained two mortgages from Washington Mutual Bank for a property in Rancho Santa Fe, .California in the amounts of $1,640,000 and $204,750. Id. at 1064. Subsequently, in 2008, JP Morgan Chase Bank purchased Washington Mutual Bank’s assets and liabilities and paid about $90 billion for a group of loans—including the Rancho Santa Fe mortgages—totaling about $120 billion of unpaid debt. Id. at 1064-65. The Rancho Santa Fe loans went into default in 2009, and Chase sold the property at a foreclosure sale in 2011. Id. The Ninth Circuit described the basis for the defendant’s assignment of error on appeal as follows:
The district court ordered $615,935 in restitution to Chase. The court subtracted the Rancho Santa Fe property foreclosure sale price ($1,228,815) from the unpaid principal balance on the first mortgage ($1,640,000), resulting in a loss of $411,185 on the first mortgage. The court added this loss to the unpaid principal balance on the second mortgage ($204,750).
Id. at 1065.
The Ninth Circuit held that the district court erred by calculating restitution to Chase “by subtracting the foreclosure sale price of the property from the unpaid principal balance on the loan.” Id. at 1067. Reasoning that “Chase purchased the loans; it did not originate them,” the Ninth Circuit vacated the restitution order and remanded for the district court to recalculate Chase’s loss, based on “how much Chase paid for the fraudulent loans (or the value of the loans when Chase acquired them).” Id. (alterations omitted).
In this case, the government offered no evidence as to how Bank of America acquired Richie’s mortgage loan, although the parties have represented that the loan was included among the assets of Countrywide that the Bank purchased.* Likewise, in Luis, the Rancho Santa Fe mortgages were included among the assets of Washington Mutual Bank purchased by Chase. Id. at 1064-65. The Luis court saw no reason to distinguish between Chase and any other downstream or successor lender in calculating the proper amount of restitution under the MVRA; nor do I. In other words, Bank of America “purchased [Ritchie’s] loan; it didn’t originate [it].” Id. at 1067. Therefore, I would hold that Bank of America’s restitution award under the MVRA should turn on how much it paid to acquire the mortgage. Any other result would constitute an impermissible windfall to the successor lender.
Here, the district court ordered restitution to Bank of America in the amount of $1,385,444.83 using the same “arithmetic calculation”—subtracting the foreclosure sale amount from the outstanding principal balance on the loan—that it used to calculate loss under U.S.S.G. § 2B1.1. J.A. 177-78. While “[t]his is an appropriate approach for making an estimate of loss under the Guidelines, where the district court need not consider a victim’s actual loss but may use evidence of the defendant’s intended loss, or even the gain realized by the defendant,” Yeung, 672 F.3d at 604 (citing U.S.S.G. § 2B1.1 cmt. n.3(A)-(B)), it will not do for purposes of determining the amount of restitution due a successor lender under the MVRA. See Howard, 784 *221 F.3d at 752 (“[A]lthough the impact of sales of mortgage notes to downstream lenders is generally irrelevant to the total-loss calculation under USSG § 2B1.1, it is highly relevant in calculating restitution under the MVRA.”).
It may be that the government would face a thorny evidentiary problem in proving the amount that Bank of America paid for Ritchie’s loan. Nor does it escape me that “the determination of the restitution, amount is by nature an inexact science.” Martin, 803 F.3d at 596 (quoting United States v. Huff, 609 F.3d 1240, 1248 (11th Cir. 2010)). But under the MVRA, “[t]he government bears the burden of demonstrating by a preponderance of the evidence the amount of actual loss sustained by the victim.” United States v. Squirrel, 588 F.3d 207, 213 (4th Cir. 2009) (citing 18 U.S.C. § 3664(e)). I would not ease that burden simply because it may prove difficult in this instance.
In light of the above, I would vacate the district court’s judgment and remand for the district court to consider anew the amount of restitution. Accordingly, I respectfully dissent.

 Indeed, Bank of America’s acquisition of Countrywide appears to be more complex than the parties have represented. See, e.g., Allstate Ins. Co. v. Countrywide Fin. Corp., 842 F.Supp.2d 1216, 1221-22 (C.D. Cal. 2012) (detailing Bank of America’s acquisition of Countrywide via reverse triangular merger).