NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 16 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

  v.

JULIAN OMIDI, AKA Combiz Julian
Omidi, AKA Combiz Omidi, AKA Kambiz
Omidi, AKA Kambiz Beniamia
Omidi, AKA Ben Omidi,

        Defendant - Appellant.

Nos. 23-1719
      23-1959

D.C. No.
2:17-cr-00661-DMG-1

MEMORANDUM*

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

  v.

SURGERY CENTER MANAGEMENT,
LLC,

        Defendant - Appellant.

No. 23-1941

D.C. No.
2:17-cr-00661-DMG-3

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted November 8, 2024

---

     *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Phoenix, Arizona

Before: PAEZ and OWENS, Circuit Judges, and SEEBORG, Chief District Judge.[**]

Following a lengthy criminal health insurance fraud trial, Julian Omidi and his company, Surgery Center Management, LLC ("SCM") (together, "Appellants") jointly appeal from their convictions of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), as well as the restitution award issued against them.[1] Omidi individually appeals from his convictions of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), false statements relating to health care matters in violation of 18 U.S.C. § 1035, and promotional money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). As the parties are familiar with the facts, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. First, Appellants argue there was insufficient evidence of materiality to sustain the mail fraud, wire fraud, and false statement convictions.[2] To find

---

[**] The Honorable Richard Seeborg, United States Chief District Judge for the Northern District of California, sitting by designation.

[1] Appellants also challenge the district court's forfeiture judgment of nearly $100 million. We address this claim in a concurrently filed opinion, in which we affirm.

[2] Because the aggravated identity theft and money laundering convictions are predicated on the fraud and false statement convictions, Omidi and SCM argue all convictions fall together.

materiality, the jury had to conclude Appellants' false statements had "a natural tendency to influence, or [were] capable of influencing," the insurers to whom the statements "w[ere] addressed." *United States v. Lindsey*, 850 F.3d 1009, 1013 (9th Cir. 2017) (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)). We cannot disturb the jury's verdict for insufficient evidence of materiality unless we determine that no "rational trier of fact could have found [materiality] beyond a reasonable doubt." *United States v. Luong*, 965 F.3d 973, 980-81 (9th Cir. 2020) (citation omitted). Because Appellants failed to renew their motion for acquittal at the close of all evidence, we review for plain error. *See United States v. Pelisamen*, 641 F.3d 399, 408-09 & n.6 (9th Cir. 2011).

On appeal, Appellants emphasize the government's failure to introduce individual insurance plans into evidence, which they argue prevented a reasonable jury from determining whether a falsity impacted a coverage decision. But substantial evidence supports the jury's conclusion that Get Thin's misrepresentations had the "natural tendency to influence" insurers even without the individual insurance plans in evidence. *Lindsey*, 850 F.3d at 1013.

For example, multiple insurance representatives testified that they rely completely on medical providers to provide accurate information about the medical necessity of claimed procedures, and they would deny claims containing false or misleading information about the service performed or its medical necessity. Get

Thin's myriad misrepresentations, which included fabricated diagnoses, forged provider signatures, and falsified patient data, spoke directly to the medical necessity of the claimed procedures and thus implicated "essential aspects of the transaction[s]" between Get Thin and insurers. *United States v. Milheiser*, 98 F.4th 935, 944 (9th Cir. 2024). On this record, and even without individual insurance plans in evidence, a reasonable jury could find Get Thin's misrepresentations material.

Appellants also argue the government's solicitation of testimony from insurance representatives that knowledge of Get Thin's lies would have prompted them to merely "investigate further" introduced the jury to a materiality theory prohibited by *Kungys v. United States*, 485 U.S. 759 (1988). We need not reach the propriety of this alternate theory of materiality because of the ample evidence demonstrating that fraudulent claims would not only have been investigated but also denied. Thus, we conclude the evidence of materiality was sufficient to sustain Appellants' mail fraud, wire fraud, and false statement convictions.

2. Second, Appellants argue the district court erred by instructing the jury that knowledge and intent to defraud could be shown through defendants' "reckless indifference to the truth or falsity of their statements," and then compounded that error by declining to define recklessness for the jury. We review de novo whether a jury instruction "misstate[d]" an element of the crime, and the district court's

"precise formulation" of an instruction for abuse of discretion. *United States v. Lloyd*, 807 F.3d 1128, 1164-65 (9th Cir. 2015) (citations omitted). If we determine an error occurred, we reverse unless, after a "thorough examination of the record," we conclude "the district court's error was harmless beyond a reasonable doubt." *United States v. Bachmeier*, 8 F.4th 1059, 1065 (9th Cir. 2021) (citation omitted). Here, assuming arguendo that the district court's instruction misstated this circuit's law, we conclude any error would be harmless due to the overwhelming evidence of Omidi's actual knowledge of fraud, which was the focus of the government's case.

3. Third, Appellants argue the district court's jury instructions on deliberate ignorance and reckless indifference constructively amended the indictment, or in the alternative, constituted a variance. A constructive amendment occurs when the "complex of facts" at trial differs "distinctly" from those in the indictment, or when "the crime charged [in the indictment] was substantially altered at trial." *United States v. Soto-Barraza*, 947 F.3d 1111, 1118 (9th Cir. 2020) (citation omitted). Alternatively, "we have generally found a variance where the indictment and the proof involve only a single, though materially different, set of facts." *United States v. Adamson*, 291 F.3d 606, 614-15 (9th Cir. 2020). We review these claims de novo. *Id*. at 612, 615.

Here, the facts charged in the indictment and presented at trial were

materially consistent; both placed Omidi at the helm of the fraudulent billing scheme. Additionally, the jury instructions on deliberate ignorance and reckless indifference did not "substantially alter[]" the crimes charged in the indictment, but rather informed the jury about how the mens rea elements of those crimes can be proven. *Accord United States v. Love*, 535 F.2d 1152, 1157-58 (9th Cir. 1976) (rejecting a claim that the district court "rewrote the indictment" by giving a reckless indifference instruction); *Lloyd*, 807 F.3d at 1164 (rejecting a similar constructive amendment argument). Thus, we hold that neither constructive amendment nor variance occurred here.

4. Fourth, Appellants argue they are entitled to a new trial due to three erroneous evidentiary rulings, which we review for abuse of discretion. *See United States v. Hankey*, 203 F.3d 1160, 1166-67 (9th Cir. 2000). We can affirm the admission of evidence "on any basis supported by the record." *United States v. Alexander*, 48 F.3d 1477, 1487 (9th Cir. 1995).

Appellants first argue the draft sleep study reports prepared by Get Thin's only registered polysomnographic technologist (RPSGT) should not have been admitted under Rule 803(6) as business records nor Rule 801(d)(2)(C) as nonhearsay party admissions. Under Rule 801(d)(2)(C), a statement is a nonhearsay party admission if it is "offered against an opposing party and . . . was made by a person whom the party authorized to make a statement on the subject."

Fed. R. Evid. 801(d)(2)(C). Here, the record reveals that Omidi hired the RPSGT to, according to his contract, "prepare detailed written reports of professional sleep study scoring." On this record, we conclude that the district court was within its discretion to admit these sleep study reports as statements authorized by Omidi under Rule 801(d)(2)(C), and we do not reach the question of their admissibility as business records.

Next, Appellants argue the testimony of a forensic accountant, who estimated the amount Appellants billed and received for fraudulent insurance claims, was inadmissible under Rule 702 as unreliable and under Rule 403 as irrelevant. We have counseled, however, that the Rule 702 admissibility inquiry is "a flexible one," and "[s]haky but admissible evidence is to be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 & nn. 17-18 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-96 (1993)). Moreover, evidence "concerning the financial impact of [a fraud] . . . may be relevant to show that a scheme to defraud existed," *United States v. Rasheed*, 663 F.2d 843, 849-50 (9th Cir. 1981), as well as a defendant's intent to defraud. *See Lloyd*, 807 F.3d at 1152 & n.6. Thus, the district court did not abuse its discretion by admitting the loss testimony.

The final evidentiary ruling Appellants challenge is the admission of several

out-of-court statements by Omidi's "litigation coordinator," Brian Oxman, which were described during the testimonies of three trial witnesses. Appellants argue Oxman's statements, which evidenced Omidi's attempts to cover up and obstruct the investigation into the fraudulent billing scheme, were irrelevant, inadmissible hearsay.

Oxman's out-of-court statement recounted by the first witness, Charles Klasky, was an instruction, not offered for the truth of the matter asserted, and thus not hearsay. *See United States v. Chung*, 659 F.3d 815, 833 (9th Cir. 2011). Oxman's statements to the second two witnesses, Larry Twersky and Jaffy Palacios, were admitted after the government introduced substantial evidence establishing Oxman and Omidi's agency relationship and were admissible as party admissions. *See* Fed. R. Evid. 801(d)(2)(D); *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010). Given this relationship, Oxman's attempts to induce witnesses to lie or cover up the crimes were probative of Omidi's consciousness of guilt. *See United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996). Thus, the district court did not abuse its discretion by admitting Oxman's out-of-court statements.

5. Fifth, Appellants raise three challenges to the district court's restitution award of $11,207,773.96 to the defrauded insurers under the Mandatory Restitution to Victims Act (MVRA). First, Appellants argue that the insurers serving as administrators for employer-funded plans are not "victims" under the

MVRA. *See* 18 U.S.C. § 3663A(a)(1), (a)(2). We review the district court's determination of whether a person or entity is a victim for abuse of discretion. *United States v. Luis*, 765 F.3d 1061, 1066 (9th Cir. 2014).

Here, the district court concluded these insurers were victims because they were contractually obligated to recover and return any overpayment to Appellants on behalf of the employers whose plans they administered. We have previously approved of third parties assuming the role of victim under the MVRA in analogous circumstances. *See, e.g.*, *United States v. Yeung*, 672 F.3d 594, 602-03 (9th Cir. 2012), *overruled on other grounds by Robers v. United States*, 572 U.S. 639 (2014); *United States v. Smith*, 944 F.2d 618, 621-22 (9th Cir. 1991). Supported by both facts and law, the district court's conclusion was not an abuse of discretion.

Second, Appellants argue the government did not prove "actual loss" as required by the MVRA due to its failure to produce the individual insurance plans. We review the factual findings underlying a district court's restitution award for clear error. *Luis*, 765 F.3d at 1065. Here, the district court concluded that "uncontradicted trial testimony" established that fraudulent claims would not have been paid, regardless of individual plan terms. We agree and conclude the district court did not clearly err by calculating actual loss without the plan documents.

Third, Appellants argue the district court erred by awarding restitution

predicated on negligent, rather than criminal, conduct.  *See* 18 U.S.C.

§ 3663A(a)(2) (providing restitution only for harm that resulted from "the

defendant's criminal conduct in the course of the scheme").  Based on our

independent review of the record, however, we conclude that the district court's

restitution award compensated insurers for their reimbursement of insurance claims

riddled with fraud, or those for medically unnecessary services, and not for

Appellants' mere negligence.  Thus, we affirm the court's restitution award in full.

6.  Sixth, Omidi challenges the sufficiency of the evidence underlying his

conviction of aggravated identity theft in violation of 18 U.S.C. § 1028A.  Because

of Omidi's failure to renew his Rule 29 motion at the close of all evidence, we

review for plain error.  *Pelisamen*, 641 F.3d at 408-09 & n.6.

Omidi specifically argues the government failed to prove the identity theft

was at the "crux" of the underlying fraud offense as required by *Dubin v. United

States*, 599 U.S. 110 (2023).  But the signature of Dr. Mirali Zarrabi misled

insurers into believing a physician was involved in the billed service, which was

necessary for Omidi to be paid for the fabricated claim.  *Accord Dubin*, 599 U.S. at

131-32 (explaining identity theft is at the crux of a healthcare fraud when it

obfuscates "'who' is involved" in the services provided).  Thus, a rational trier of

fact could conclude the identity theft was at the "crux" of the scheme to defraud.

Omidi also argues there was insufficient evidence of his direct involvement

in the misuse of Dr. Zarrabi's identity. Trial witnesses clearly established, however, that Omidi micromanaged every aspect of the sleep study program, created its protocols, and reviewed every insurance claim before submission. Thus, a rational trier of fact could also conclude Omidi was personally involved in the unlawful use of Dr. Zarrabi's signature.

7. Seventh, Omidi argues the district court erred by instructing the jury that the government need not prove Omidi stole Dr. Zarrabi's identity to convict him of aggravated identity theft. Even though the district court's instruction is an accurate statement of this court's holding in *United States v. Osuna-Alvarez*, 788 F.3d 1183 (9th Cir. 2015), Omidi argues the Supreme Court "effectively overruled" *Osuna-Alvarez* in *Dubin*. *Dubin* and *Osuna-Alvarez*, however, interpret different statutory language. *Compare Osuna-Alvarez*, 788 F.3d at 1185-86 (construing the phrase "without lawful authority") *with Dubin*, 599 U.S. at 128 n.8 (declining to do so). Because these holdings are not "clearly irreconcilable," we remain bound by *Osuna-Alvarez*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). The instruction was not in error.

8. Eighth, and finally, Omidi argues the district court's co-schemer liability instruction, which mirrored the Ninth Circuit's model instruction, "tainted" the § 1028A conviction. The ample evidence of Omidi's direct involvement in the offense, however, dispels any notion that Omidi's § 1028A conviction depended

upon a co-schemer liability theory.  Thus, any potential error would be harmless.

**AFFIRMED**.